**William MARIANI GIRON, et al.,**
**Plaintiffs, Appellees,**

v.

**Heriberto ACEVEDO RUIZ, etc., et al.,**
**Defendants, Appellants.**

**No. 87–1140.**

United States Court of Appeals,
First Circuit.

Heard Sept. 16, 1987.

Decided Dec. 3, 1987.

Paul B. Smith, Jr., with whom Pedro Juan Perez Nieves, Saldana, Rey, Moran & Alvarado, Santurce, P.R., Hector Rivera Cruz, Secretary of Justice, and Rafael Ortiz Carrion, Sol. Gen., Hato Rey, P.R., were on brief, for defendants, appellants.

Frank Rodriguez Garcia, Ponce, P.R., for plaintiffs, appellees.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

■ Plaintiff William Mariani Giron, hereinafter Mariani, was discharged as a zone coordinator of the Puerto Rico Civil Defense Agency (CDA) in the early spring of 1985 after the change in the political party holding the governorship. The discharge letter, authored by defendant Heriberto Acevedo Ruiz, the newly appointed Civil Defense Director, gave no reason for removal, but merely stated that the discharge was pursuant to the Puerto Rico Public Service Personnel Act, P.R.Laws Ann. tit. 3, § 1350 (1978), Mariani's position being one of "trust or confidence." Even if this was contractually permissible, it did not destroy Mariani's right to claim an

---

unfair political discharge under federal law, 42 U.S.C. § 1983, or even under the law of the Commonwealth, P.R.Laws Ann. tit. 3, § 1394 (1978); *Diaz de Llovet v. Office of the Governor*, 112 P.R.Dec. 747 (1982) (affording administrative remedy for back pay). Mariani chose to sue in the District Court for reinstatement and damages.

The court took extensive testimony, and ultimately granted Mariani's request for a preliminary injunction of reinstatement. We denied defendants' request for a stay pending appeal, and now face the preliminary injunction itself. We affirm.

In the district court, defendants took the position that Mariani's removal was not politically motivated; that even if it was, his position was such that political affiliation was an appropriate requirement, so that defendants were free to remove him, and, finally, that he would have been discharged in any event. The court rejected all three defenses, or, more exactly, held that plaintiff had made, as to each, the four showings needed for a preliminary injunction. *Cf. Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006 (1st Cir.1981).

■ The court's rejection of the first defense was telling, and defendants do not presently contest it. As to the second, the court found reason to believe that the entire CDA, because of its peculiar tie-in with the federal government, and the nature of its activities, was outside of the political affiliation area, and hence, of course, so was Mariani. It is not necessary to go this far. At a minimum, applying the factual findings made at length in the court's opinion, Mariani was adequately found to fall well without the political exception.

Counting the Governor as CDA Chief, Mariani was sixth level, placing under a zone coordinator supervisor. Defendants' conjured political aspects are a combination of imaginative thinking and affirmatively erroneous reasons. The assertion, for example, that an employee engaged by his superiors would be more loyal and trustworthy than a carryover undercuts the entire rationale of the Supreme Court decisions. As we have said, political firing is constitutional only "when it serves the interests of the government, *not* a party organization; it serves a governmental interest when used for policymakers or confidential employees whose work involves issues where there is *room for political disagreement on goals or their implementation.*" *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 240 n. 7 (1st Cir. 1986) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (emphasis added). Mere employee-employer loyalty is not enough. Equally irrelevant is defendants' truism that good performance reflects well on the party. Poor performance may be a reason for discharge, but that means performance, not party affiliation. Defendants' contentions come to little more than nostalgic affection for the Public Service Personnel Act and an unwillingness to recognize the principles that they face.

Finally, we do not fault the court's probability finding as to defendants' true motivation. It was fully warranted in regarding their subjective criticisms of Mariani's performance, and need for improvement, as post hoc rationalization and pretextual.

In sum, the district court acted well within the limits of its Rule 65 discretion as to each of the *Planned Parenthood* criteria. Irreparable harm to the plaintiff in the absence of relief is present due to the nature of the First Amendment rights violated by an impermissible political firing. *Elrod v. Burns*, 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976); *Romero Feliciano v. Torres Gaztambide*, 824 F.2d 135, 138–39 (1st Cir.1987).[1] Lack of substantial harm to the defendants in

---

1. In political firing cases, the finding of loss of First Amendment freedoms and the consequent irreparable harm depends upon success on the merits, namely the availability of First Amend-
ment protection of the job in question. Assuming a finding of likelihood of success on the merits, the establishment of this first element is

their personal capacities [2] by an injunction is clear: their only potential interests in the identity of the holder of the position are simply related to congeniality of a working relationship, or else are partisan in nature.

The analysis of the public interest in this case is closely linked to the finding as to success on the merits. The district court found it likely that facts at trial would place plaintiff's position in that category for which private First Amendment values outweigh public "political process" values. Such a resolution on the merits (of a political firing case) would fully resolve the element of the public interest, save only for the fact that the trial court's resolution was, at best, only an estimate.

The issue of possible conflicting public interest is not necessarily answered by a finding of a likelihood of success on the merits. *Yakus v. United States*, 321 U.S. 414, 440–41, 64 S.Ct. 660, 674–75, 88 L.Ed. 834 (1944). We have, however, recognized that a finding attributing great weight to one of the four components might make up for a relatively weak finding as to another. *E.g., Lancor v. Lebanon Housing Authority*, 760 F.2d 361, 363 (1st Cir.1985) (strong showing on balance of harm compensates for less than compelling showing on the merits); *see Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 276 (1st Cir.1981). Correspondingly, it might be that if the chances of success are good, but not of the highest, and the adverse effect on the public interest very serious should the prognostication prove mistaken, the public interest might require that the injunction be denied. Defendants so argue here, but we do not agree. Even if the trial does not bear out the district court's estimate, it is only if the intervening incumbency of the plaintiff in his old job were objectively detrimental that the injunction could materially harm the public interest. Granting that some partisan friction may exist during Mariani's incumbency, the favorable level of his training and past performance, together with the nature of his

duties in a time of crisis, convinces us that the district court's exercise of discretion does not offend public interest enough to give it weight.

*Affirmed.*

---

in no sense eroded by its reliance upon another element of the analysis.

**2.** Apart from this, these defendants can be harmed by an injunction only in their official capacities, and any such potential harm is subsumed under the element of the public interest.