**Sol KAISER, et al., Plaintiffs,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., etc., et al., Defendants.**

**Civ. No. 86–1316 (JAF).**

United States District Court, D. Puerto Rico.

Dec. 14, 1987.

María H. Sandoval, Nachman & Fernandez–Sein, San Juan, P.R., for plaintiffs.

Porter & Owens, Illinois; Edward A. Godoy, Feldstein Gelpi Hernandez & Gotay, San Juan, P.R., Burns & Levinson, Boston, Mass., for defendants Armstrong, Fibreboard, Celotex, Eagle–Picher, and GAF.

Ramón H. Vargas, Vargas & Rive, San Juan, P.R., for defendant Foster Wheeler.

Carlos E. Jiménez, Souffront & Souffront, San Juan, P.R., Neely & Player, Atlanta, Ga., for defendant Raymark Industries.

Ricardo L. Rodríguez, San Juan, P.R., for defendant Harlock.

OPINION AND ORDER

FUSTE, District Judge.

Sol Kaiser, a former boiler technician with the United States Navy, filed this suit claiming that the defendants are liable in negligence and for breach of the warranty

of fitness for his asbestos-induced condition. Diversity jurisdiction is invoked pursuant to 28 U.S.C. Section 1332. Much discovery has already been conducted in this case. We see from the file that much more is contemplated for the future.

Before the court are dispositive motions, including a motion for summary judgment based on lack of product identification, lack of personal jurisdiction, and statute of limitations, as well as the plaintiffs' opposition thereto. This court holds that the suit is barred by the applicable statute of limitations and, therefore, does not pass on the other dispositive motions.

## I. GENERAL FACTUAL BACKGROUND

Sol Kaiser, 57 years of age, served in the United States Navy from 1948 to 1952, as a boiler technician on two destroyers, first with the U.S.S. Eugene Allen Green, and then with the U.S.S. Damato. As a boiler technician, he was assigned to repair pipes that were insulated and covered by asbestos cloth. In order to repair the pipes he would have to cut, rip or tear the cloth lining from the pipes. His description of his exposure to the asbestos is as follows:

> While working on boilers and steam pipes I had to rip asbestos packing from the pipes to get at leaks in closed areas. I was not only breathing asbestos dust, I actually picked asbestos out of my nostrils, and in fact I drank coffee with asbestos dust in it, aboard ship we all did, not knowing its danger.

Plaintiffs' Exhibit C, V.A. Appeal Statement.

After leaving the Navy, Mr. Kaiser moved to New York, where he held a variety of menial jobs from 1952 to 1959. In 1959, Kaiser moved to Puerto Rico, and worked for the Puerto Rico Stamping Company until 1960, and the Hospital Supply Company until 1961. From 1961 to 1971 he was a salesman with the Dubois Chemical Company. Beginning in 1971 he worked as a salesman at the Eutectic–Castolin Company, where he eventually became General Sales Manager. He left that job in 1980 on a 100% Social Security disability pension due to respiratory problems.

## II. MEDICAL FACTUAL BACKGROUND

Sol Kaiser's history of respiratory problems can be related as follows. In 1960, he suffered an upper respiratory infection. He was later hospitalized for 23 days in Puerto Rico due to what appeared to be acute bronchitis and bronchial asthma. In 1980, he filed a Social Security claim alleging a 100% disability claim because of "respiratory problems." The claim was granted and a $1,050 monthly pension was allowed. The record shows that between 1980 and 1982, Mr. Kaiser sought emergency room treatment and/or was hospitalized nine times because of pulmonary problems, usually bronchial asthma or severe respiratory attacks. Dr. Córdova, a physician with the Hospital del Maestro, San Juan, Puerto Rico, recommended that Mr. Kaiser move to Arizona because the climate would improve his pulmonary condition.

Kaiser and his family moved to Arizona in 1982. There he sought treatment at various medical facilities of the University of Arizona. When he was first admitted to the University Medical Center on December 8, 1982, he informed his physicians of his history of asbestos exposure while in the Navy, as well as his asthma attacks. A one-page medical record from the Health Sciences Center entitled "Problem List," dated December 8, 1982, lists two respiratory diseases, namely, "Asthma" and "Asbestos pleural disease." During treatment at the Pulmonary Clinic in March of 1983, he asked his doctors whether "asbestos has anything to do [with] his asthma." His smoking and asbestos exposure were also explored. Furthermore, progress notes from the Pulmonary Clinic dated August 17, 1983, indicate that the physicians there believed that Mr. Kaiser suffered from "Asthma/Asbestosis." On April 13, 1983, in a consultation meeting with a physician at the Health Sciences Center, Mr. Kaiser related his "smoking & asbestos exposure." Sol Kaiser consulted with the same physician on May 19, 1983 for "Asthma [and] asbestos exposure." In a November

21, 1983, consultation with a different doctor at the Health Sciences Center, Mr. Kaiser's medical history is characterized as "Old asbestos pleural disease."

Doctor Benjamin Burrows, Mr. Kaiser's principal physician at the University of Arizona since 1982, prepared a report on April 15, 1985, in which he diagnosed Kaiser as having asbestos-related pleural calcifications. Since Kaiser planned to return to Puerto Rico, Dr. Burrows suggested that he explore his asbestos-related condition with physicians here. The plaintiff received Dr. Burrow's report before he returned to Puerto Rico in June, 1985.

### III. LAW GOVERNING

■ The statute of limitations governing an action filed under article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. sec. 5141, is "one year ... from the time the aggrieved person had knowledge" of the injury. 31 L.P.R.A. sec. 5298 (1930).[1] The definition of knowledge is crucial to resolution of this issue. Knowledge is both "notice of the injury" and "notice of the person who caused it." *Colón Prieto v. Géigel*, 115 D.P.R. 232, 247, Official Translation at 16 (1984). However, the plaintiff need not "know the exact name of the tortfeasor" to satisfy the requirement of knowledge of the person who caused the injury. *Santiago Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987). Similarly, the plaintiff need not "know the exact culprit of the injury ...; it is enough for the [plaintiff] to know the cause of the injury." *Ramírez Pomales v. Becton Dickinson & Co., S.A.*, 649 F. Supp 913 (D.P.R.1986).

■ This suit was filed on August 15, 1986. The plaintiffs argue that Mr. Kaiser did not have the requisite knowledge until sometime after the summer of 1985. To justify the summer of 1985 starting date for statute of limitations' purposes, plaintiffs, in their Statement of Material Facts, point out three facts, taken from Kaiser's deposition, which arguably create a genu-

ine issue of material fact: that Mr. Kaiser was first told that he had asbestosis at the end of 1985 or 1986; that he did not know the cause of his health problems until after August 15, 1985; and that he did not know that he had asbestosis until after August 15, 1985.

Plaintiffs essentially argue that after August 15, 1985, Kaiser's brother-in-law gave him a June 1985 article published in the New Yorker Magazine on the subject of asbestosis, and told him to consult a doctor. After reading the article, he became alarmed at the references to similarly-situated Navy boiler technicians who also suffered from asbestosis. He later consulted attorneys, who filed the present lawsuit on his, his wife's, and his children's behalf. However, after considering the above-referenced facts, the court finds that the plaintiffs' statement does not create a genuine issue of material fact which may impede the entry of summary judgment.

A summation of the medical records from the University of Arizona conclusively establishes that, beginning in 1982, Mr. Kaiser discussed with at least three different medical facilities his asbestos exposure and its possible effects on his respiratory problems. Be it remembered that Mr. Kaiser has a history of respiratory problems that began in 1960. He admits and alleges that his only exposure to asbestos was between 1948–1952, while in the Navy. After having recurring bronchial asthma and severe respiratory attacks that left him 100% disabled, he moved to Arizona. When giving his medical history in his first consultation at the Medical Center on December 8, 1982, Kaiser informed his physician that he was exposed to asbestos while in the Navy. Other records on that date indicate that "asbestosis pleural disease" was explored. In 1983, Mr. Kaiser inquired whether his asbestos exposure had anything to do with his asthma. He admitted in a deposition that his present condition upon which his lawsuit is based is "the

---

1. Civil law negligence is "not anticipating and foreseeing the rational consequences of an act, or the failure to perform an act which a prudent person could have foreseen under the same circumstances." *Ramos v. Carlo*, 85 P.R.R. 337, 342 (1962); *Ramírez v. American R.R. Company*

*of P.R.*, 17 P.R.R. 440 (1911). The essence of fault or negligence lies in the lack of diligence and foresight on the part of the wrongdoer. (Citation omitted). *Colmenares Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102, 1109 (1st Cir. 1986) (Torruella, J., dissenting).

same sickness [he] had five years ago," and the same injury he had in 1960. In numerous other consultations before 1983, Mr. Kaiser discussed his asbestos exposure with varying doctors at the University of Arizona. In 1983, his condition was characterized as "old asbestosis pleural disease." Finally, Dr. Burrow's April 15, 1985 report contains a diagnosis of asbestos-related pleural calcification.

The contention that Mr. Kaiser had knowledge of his asbestosis after reading the New Yorker article is of no consequence. He admits that before he read the New Yorker article he was aware that his asbestos exposure had an effect on his other respiratory problems. The Civil Code and the interpreting case law do not allow us to accept that after reading the New Yorker article, in light of his Navy experience, "really hit home." In other words, Kaiser knew for many years before the filing of this suit that asbestos exposure was at the heart of his respiratory ailment.

Sol Kaiser's knowledge in 1982 and 1983 triggering the statute of limitations is similar to the operative date for determining policy coverage between asbestos products manufacturers and their insurance carriers. *Eagle–Picher Industries, Inc. v. Liberty Mut. Ins.*, 682 F.2d 12 (1st Cir.1982) (*"Eagle–Picher I"*); *see also Eagle–Picher Industries v. Liberty Mut. Ins. Co.*, 829 F.2d 227 (1st Cir.1987) (*"Eagle–Picher II"*). In *Eagle–Picher I*, the First Circuit addressed at what time asbestos-induced diseases must result in order to trigger policy coverage. The question was whether the disease "results" after initial exposure, or whether it "results" when it becomes clinically evident or manifest. 682 F.2d at 17. The court adopted the manifestation theory, recognizing that the cause of the disease, or the exposure to asbestos, is not simultaneous to the condition, or asbestosis. The disease does not result until a "doctor [is] able to detect sufficient scarring to make a prognosis that the onset of manifested disease was inevitable." 682 F.2d at 19. The court then held that insurance coverage for asbestos-related diseases triggered "when the asbestos-related disease became reasonably capable of medical diagnosis." 682 F.2d at 15. *See also Eagle–Picher II* (determining the diagnosability of asbestos-related diseases).

While the Eagle–Picher litigation involved insurance contract interpretation, the logic and rationale of its decision is equally applicable here. The asbestos-related diseases do not result until the individual begins to suffer its symptoms; it is not manifested until that time. Similarly, Sol Kaiser did not have knowledge of his condition until the onset of the symptoms and the prognosis of asbestosis in 1982 and 1983.

### IV. CONCLUSION

This court concludes that Mr. Kaiser had knowledge of his asbestos-related condition and the cause of it since 1982–1983.[2] He knew that his only exposure to asbestos was in the Navy, the exact name of the tortfeasor(s) being immaterial. *Santiago Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987). Because his complaint was filed on August 15, 1986, this complaint is time-barred under 31 L.P.R.A. sec. 5298 (1930).

This court is aware that the statute of limitations has served to defeat plaintiffs' claim. However, as the Supreme Court has recognized, it goes without saying that statutes of limitations often make it impossible to enforce what were otherwise valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which are attached or are applicable. *United States v. Kubrick*, 444 U.S. 111, 125, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979).

Judgment shall be entered dismissing the complaint. The parties are to assume their own costs.

IT IS SO ORDERED.

---

**2.** The record reflects that his wife and children knew of his condition at the same time he did. The plaintiffs have not even attempted to place these facts in dispute. Therefore, their claims are time-barred also. 31 L.P.R.A. sec. 5298 (1930).