**Sol KAISER, et al., Plaintiffs, Appellants,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants, Appellees.**

**No. 88–1215.**

United States Court of Appeals, First Circuit.

Heard Jan. 12, 1989.

Decided April 13, 1989.

John J. McConnell, Jr., with whom, Maria H. Sandoval and Law Offices of Nachman & Fernandez–Sein, San Juan, P.R., were on brief, for plaintiffs, appellants.

Kevin E. Young with whom, Lawrence G. Cetrulo and Burns & Levinson, Boston, Mass., were on brief, for defendants, appellees Armstrong World Industries, Inc., Eagle–Picher Industries, Inc., H.K. Porter Co., Fibreboard Corp., Owens–Illinois, Inc., GAF Corp., and The Celotex Corp.

David Rive Rivera, Old San Juan, P.R., and Vargas & Rive, on brief, for defendant, appellee Foster Wheeler.

Before CAMPBELL, Chief Judge, SELYA, Circuit Judge, and PETTINE,[*] Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiffs appeal from the district court's grant of summary judgment for defendants, dismissing as time barred plaintiffs' complaint against several asbestos manufacturers [1] for damages arising out of Sol Kaiser's injuries from asbestos exposure. 678 F.Supp. 29. We agree with the district court that Kaiser's suit is barred by Puerto Rico's one-year statute of limitations because Kaiser knew of his injury and of its cause more than one year before bringing suit.

I.

A court of appeals lacks power to entertain an appeal from a party who is not specified in the notice of appeal. *Torres v. Oakland Scavenger Co.,* —— U.S. ——, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988); *Gonzalez Vega v. Hernandez Colon,* 866 F.2d 519, 519 (1st Cir.1989); *Santos Martinez v. Soto Santiago,* 863 F.2d 174, 175 (1st Cir.1988). *See* Fed.R.App.P. 3(c) (the notice of appeal "shall specify the party or parties taking the appeal"). In this case,

---

[*] Of the District of Rhode Island, sitting by designation.

1. The appellees are Foster Wheeler, Armstrong World Industries, Inc., Eagle–Picher Industries, Inc.; H.K. Porter Company; Fibreboard Corporation; Owens–Illinois, Inc.; GAF Corporation; and The Celotex Corporation.

the notice of appeal submitted on January 14, 1988, was captioned:

Sol Kaiser, *et al.*, Plaintiffs

The text of the notice provided

NOTICE IS HEREBY GIVEN that plaintiffs, hereby appeal to the United States Court of Appeals for the First Circuit, from the final judgment entered in this action on December 15, 1987, dismissing the complaint....

Nowhere in the notice of appeal appear the names of Sol Kaiser's wife and children, Alida Veve de Kaiser, Lia Kaiser, and Clinton Kaiser, who sued for damages to them as a result of Kaiser's disability. The question is raised, therefore, whether we have appellate jurisdiction over the appeals of these members of Sol Kaiser's family. *See Torres*, 108 S.Ct. at 2409 ("et al." fails to indicate that persons not otherwise designated intend to appeal).

Kaiser contends that we have jurisdiction over the appeals of his children since their representative character makes them wholly dependent on his own appeal, as to which jurisdiction is clear. He relies for this proposition upon a recent decision of the Fifth Circuit, *King v. Otasco, Inc.*, 861 F.2d 438 (5th Cir.1988), holding that where a father brought suit in his individual capacity and on his children's behalf, the notice of appeal naming only the father provided the court with jurisdiction over the children's appeals.

We need not decide whether to adopt the approach taken by the Fifth Circuit. As we sustain the district court's holding that Sol Kaiser's action is time barred, and as no argument was raised below that his wife's and children's claims stood on any different footing vis-a-vis the statute of limitations than his own, it is academic whether we have jurisdiction over the latter appeals. We shall accordingly assume for purposes of argument, but without deciding, that we have jurisdiction over them. *See Norton v. Mathews*, 427 U.S. 524, 530–32, 96 S.Ct. 2771, 2774–76, 49 L.Ed.2d 672 (1976) (when relief is to be denied whether or not court has jurisdiction, the jurisdictional question need not necessarily be decided).

## II.

The summary judgment materials show the following. Sol Kaiser served in the United States Navy from 1948 to 1952. His duties included repairing insulated pipes on destroyers. This required cutting and tearing asbestos cloth from the pipes. Asbestos dust so pervaded his work area on the ship that at times he had to remove asbestos particles from his nostrils. He and the other boiler technicians frequently drank coffee with asbestos dust floating in it, knowing nothing of the danger from asbestos exposure. Eight years after leaving the Navy, Kaiser began to experience what was to become a lifetime of respiratory ailments. In 1960, while living in Puerto Rico, he was hospitalized for breathing difficulties diagnosed as acute bronchitis and bronchial asthma. By 1980, Kaiser was completely disabled as a result of respiratory problems, and successfully petitioned for a social security disability pension. He was hospitalized for attacks diagnosed as bronchial asthma nine times over the next two years. In 1982, on the advice of his physician, Kaiser moved his family from Puerto Rico to Arizona, where the climate was better for his pulmonary disease.

Kaiser's medical records from the University of Arizona contain several references to Kaiser's asbestos exposure and to asbestos-related diseases. His medical history, taken when he first visited the hospital in 1982, included a reference under "occupational history" to Kaiser's asbestos exposure when he served in the Navy as a boiler repairman. The "problem sheet" prepared on Kaiser's first visit to the University of Arizona Health Sciences Center lists "asthma" and "asbestos pleural disease." Three chest x-ray reports prepared in 1983 indicate that Kaiser's lungs contained "calcific pleural changes" and "pleural calcifications." These reports reference Kaiser's history of asbestos exposure. One states that the x-ray "may well reflect changes related to asbestos exposure." The latest chest x-ray characterizes

Kaiser's history as "old asbestos pleural disease."

Records of Kaiser's office visits while he lived in Arizona demonstrate that physicians made progressively more certain diagnoses of asbestos-related disease. A doctor's "assessment" dated March 16, 1983, included "asthma," but also questioned whether certain problems were not consistent with Kaiser's history of smoking and asbestos exposure. This same record contained a report of Kaiser's "subjective" condition, including "wonders if asbestos has anything to do [with] his asthma." On August 17 of the same year, 1983, a doctor's "assessment" reads "asthma/asbestosis."

On April 15, 1985, just before Kaiser and his family moved back to Puerto Rico, Kaiser's primary physician at the University of Arizona, Dr. Burrows, prepared a letter "To Whom It May Concern" describing Kaiser's medical condition and treatment. The letter stated that Kaiser was treated primarily for "persistent asthma symptomatology." The letter also includes a statement that "[h]is past history is of interest in that he had definite exposure to asbestos while working as a boiler repairman in the navy back in the 1950's." Dr. Burrows's letter also recounted that "periodic chest x-rays have been obtained since his initial film revealed some pleural calcification compatible with his past history of asbestos exposure. Regular re-evaluation of the chest is certainly indicated in view of his increased risk for lung cancer or mesothelioma." Kaiser recounts that in 1985 Dr. Burrows "suggested I explore with my doctor upon my return to Puerto Rico the fact that I had been exposed to asbestos while in the Navy."

Kaiser's likely awareness while in Arizona that his sickness was asbestos related is reinforced by evidence from members of his family. Kaiser's brother-in-law, Charles Joseph, stated in a deposition that sometime after Kaiser returned to Puerto Rico, Kaiser recounted to him that Kaiser's doctor in Arizona had told him about the asbestos fibers in his lungs. Both Kaiser's children stated that while they were living in Arizona they heard their father say that his time in the Navy was the cause of his breathing problems. Notwithstanding, Kaiser testified in his own deposition that no one at the University of Arizona ever told him his breathing problems possibly were caused by his exposure to asbestos. He also denied ever inquiring of his doctors in Arizona about the relationship between his asthma and asbestos exposure.

After Kaiser and his family returned to Puerto Rico in 1985, Charles Joseph showed Kaiser an article about asbestos-related litigation in the June 24, 1985, issue of a national magazine. Kaiser deposed that it was from this article that he first learned that asbestos exposure could injure one's lungs. Kaiser's deposition contains differing statements about when he read the article. At one point, he states that he read the article "right after the summer," but at another he states that he read it "in the summertime."

In any event, Kaiser contacted an attorney right after reading the article. The summary judgment materials include a letter from Kaiser's attorney dated July 19, 1985, requesting from the University of Arizona Health Sciences Center Kaiser's medical records. Kaiser also contacted a doctor, who told him sometime in late 1985 or early 1986 that he suffered from asbestosis. The Kaisers filed this lawsuit seeking general and special damages for Kaiser's asbestos-related injuries on August 15, 1986.

### III.

All parties accept in their briefs and argument that the applicable statute of limitations in this diversity action brought in the United States District Court for the District of Puerto Rico is that of Puerto Rico. We shall accordingly assume, without further inquiry, that this is so. The statute of limitations governing a civil negligence action in Puerto Rico is "one year ... from the time the aggrieved person has knowledge" of the injury. P.R. Laws Ann. tit. 31, § 5298 (1968). The Supreme Court of Puerto Rico has defined "knowledge" as both "notice of the injury" and "notice of

the person who caused it." *Colon Prieto v. Geigel*, No. 0-83-400, slip op. at 16 (Official English Translation) (P.R. Mar. 29, 1984) (quoting I.A. Borrell y Soler, *Derecho Civil Espanol* 500, Barcelo, Ed. Bosch (1955)). "If a plaintiff brings an action more than a year after the injury took place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times." *Santiago Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987) (citing *Iluminada Rivera Encarnacion v. Estado Libre Asociado de Puerto Rico*, 113 D.P.R. 383, 385 (appellee's notarized translation at 4)). "Notice of the injury" occurs when there

> exist some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed. These circumstances need not be known in order to argue that the damage has become known, because its scope, extent and weight may be established later on during the prosecution of the remedial action.

*Delgado Rodriguez v. Nazario de Ferrer*, No. CE-86-417, slip op. at 10 (Official English Translation) (P.R. May 16, 1988) (quoting H. Brau del Toro, *Los Danos y Perjuicios Extracontractuales en Puerto Rico* 639-40, Pubs. J.T.S., Inc. (2d ed. 1986)).

■ "Notice of the person who caused the injury" is required, according to the Supreme Court of Puerto Rico, so that the injured person *"may know who to sue."* *Riley v. Rodriguez de Pacheco*, Nos. R-84-107, R-84-110, slip op. at 10. (Official English Translation) (P.R. Dec. 2, 1987); *Colon Prieto*, slip op. at 15 (Official English Translation).[2] The key inquiry under this prong of the "knowledge" requirement is whether plaintiff knew or "with the degree of diligence required by law" would have known whom to sue. *See Santiago Hodge v. Parke Davis & Co.*, 833 F.2d at 8 (citing *Colon Prieto*, slip op. at 12-13 (Official English Translation) (" 'if ignorance [of the relevant facts reflects plaintiff's] negligence or lack of care, ... it would not be logical ... to postpone the starting point of the statute of limitations' ") (quoting A. Borrell Macia, *Responsabilidades Derivadas de Culpa Extracontractual Civil* 344-45 (Bosch ed. 2d ed. 1958)), and slip op. at 15 (Official English Translation) (quoting I-1 J. Puig Brutau, *Fundamentos de Derecho Civil* 876-77 (Bosch ed. 1979))). In *Parke Davis & Co.*, it was held that the period of limitations had begun to run once plaintiff "knew of her injuries, their physical causes, and their relation to the workplace," even though she did not know the exact name of the defendant, the corporate parent of her employer. *Id.* at 7-8. We reasoned that the requirement in Puerto Rico law of knowledge of the "author" of the injury did not, at least in ordinary circumstances, require plaintiff to know "the exact name of the tortfeasor or the precise intracorporate relationships"; these were not "a clandestine or hidden fact." *Id.* at 8 (citing *Colon Prieto*, slip op. at 15 (Official English Translation)). *See also Ramirez Pomales v. Becton Dickinson & Co., S.A.,*

---

**2.** Defendants urge that the requirement that plaintiff have knowledge of the injury's "author" is limited to medical malpractice actions, since both *Riley* and *Colon Prieto* concerned injuries inflicted by physicians. For support, defendants cite *Delgado Rodriguez v. Nazario de Ferrer,* a case more recent than either *Riley* or *Colon Prieto*. *Delgado Rodriguez* addressed the applicability of the statute of limitations to a political discharge claim. Slip op. at 1-2 (Official English Translation). The discussion in *Delgado Rodriguez* addresses only the "notice of the injury" prong of the knowledge requirement; the case is silent about the "author of the injury" element of "knowledge." We are not convinced that, as defendants urge, this indicates a rejection of the second "knowledge" prong. Since the *Delgado Rodriguez* plaintiff's action was for a politically motivated discharge, it was obvious that plaintiff was aware as of the date of the discharge that the "author" of his injury was the individual who fired him. It seems likely the Supreme Court of Puerto Rico assumed plaintiff was aware of the "author" of his injury, and thus focused only on the "knowledge of the injury" prong. There is no reason, therefore, to infer from the court's silence the rejection of a standard expressly announced in *Colon Prieto,* and reaffirmed as recently as December 1987 in *Riley.* If the Supreme Court of Puerto Rico had intended to change the knowledge requirement for Puerto Rico's statute of limitations, the court would undoubtedly have said so.

649 F.Supp. 913, 922 (D.P.R.1986) (plaintiff need not know "the exact culprit of the injury …; it is enough for the plaintiff to know the cause of the injury."), *aff'd on unrelated appeal,* 839 F.2d 1 (1st Cir. 1988).

## IV.

This action was brought on August 15, 1986. It therefore is time barred by Puerto Rico's limitations statute if Sol Kaiser had the requisite "knowledge" of his injuries and their cause prior to August 15, 1985.

Summary judgment is appropriate only in the absence of a "genuine dispute as to any material fact" and when "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For summary judgment purposes, we construe the facts set out in the summary judgment materials in the light most favorable to Kaiser, the nonmoving party. In reviewing the correctness of summary judgment, we determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *DeArteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir.1988). "This turns on whether 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *DeArteaga,* 862 F.2d at 941 (quoting *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511).

The district court found that Kaiser "had knowledge of his asbestos-related condition and the cause of it since 1982–1983," based principally on the information contained in Kaiser's medical records from the University of Arizona.[3] Kaiser challenges this conclusion. Kaiser says that his deposition statement that he was first told he had asbestosis in late 1985 or early 1986 raises

a genuine issue whether he had knowledge any earlier than a year before filing suit. Kaiser contends that he could not have known the cause of his injuries in 1982–83 because he did not know then that asbestos exposure could cause lung injuries. Additionally, he says he did not know which manufacturers had supplied asbestos for the two Navy destroyers on which he had worked, hence could not know whom to sue.

 The difficulty with Kaiser's above arguments is that, even assuming for sake of argument that he lacked sufficient knowledge in 1982–83, the record is overwhelmingly clear that by the first half of 1985 he was aware of the likelihood that his illness was asbestos related. His treating physician, Dr. Burrows, wrote on April 15, 1985, of Kaiser's "definite exposure to asbestos" while in the Navy (a fact never in question), and of x-rays that revealed pleural calcification compatible with his past history of asbestos exposure. Even more compelling, in attempting to refute the evidence that he had knowledge as early as 1982–83, Kaiser stated that he had learned that exposure to asbestos could injure the lungs when he read a 1985 magazine article about asbestos litigation. After reading this article, Kaiser says, he retained his attorney. We know that his attorney was on board by at least July 19, 1985, since there is a letter from the attorney in the summary judgment materials dated July 19, 1985, in which the attorney requests Kaiser's medical records from the University of Arizona Health Sciences Center. It follows that Kaiser read the informative magazine article prior to July 19, 1985, and thus, by his own admission, was by then, at least, on notice of the connection between asbestos and his illness. Kaiser, therefore, knew of the causal link between his disability and asbestos over a year before he brought suit.[4]

---

**3.** The evidence of knowledge during the 1982–83 period was indeed very strong. It included doctors' notations in medical records relative to whether asbestos had caused his respiratory ailments and a reported question by Kaiser whether asbestos had anything to do with his asthma. There were also statements of family members

indicating that during this period he had attributed his breathing problems to his Navy work.

**4.** Kaiser vigorously asserts that there is a difference between the disease "asbestosis," which was diagnosed in late 1985 or early 1986, and asbestos calcifications, which Dr. Burrows refer-

To be sure, Kaiser stated at one point in his deposition that he had read the magazine article "right after the summer," although elsewhere he testified only to reading it "in the summertime." But given the overwhelming evidence described above, from Kaiser's treating physician and from Kaiser himself, this vague remark is too weak to create a material issue of fact. Summary judgment is appropriate even in the face of conflicting evidence if the latter is insufficient to support a jury verdict in the nonmovant's favor, as this clearly would be. *See Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510.

Since Kaiser knew more than a year before he brought suit both that he had a major pulmonary ailment and that it was likely attributable to asbestos exposure while in the Navy, the only remaining question is whether he had adequate knowledge of the "author" of his illness, *i.e.,* of the manufacturers who produced the asbestos to which he had been exposed. Kaiser seeks to distinguish his case from one where the plaintiff is unaware only of the tortfeasor's "exact name," as in *Parke Davis & Co.,* 833 F.2d at 7, urging that he not only was unaware of defendants' names, but of their identities. Kaiser complains in his appellate brief that "[i]nformation relating to the identity of the actual manufacturers ... was not in the public domain. Identifying the Defendants was an extremely complex process, and, involved an enormous amount of man hours."

Because Kaiser brought this suit more than a year after being injured, he bears the burden of proving that he "lacked the requisite knowledge at the relevant times." *Parke Davis & Co.,* 833 F.2d at 7 (citing *Iluminada Rivera Encarnacion v. Estado Libre Asociado de Puerto Rico,* 113 D.P.R. 383, 385 (1982) (appellee's notarized translation at 4)). The summary judgment materials contain nothing to support Kaiser's contention in his brief that defendants' identities were not in the public domain once Kaiser was on notice that his injuries were likely due to being exposed to asbestos during his time in the Navy. No facts were presented tending to show that the asbestos manufacturers' identities were the type of " 'clandestine or hidden fact of which the holder of the right [*i.e.,* the plaintiff], acting with the degree of diligence required by law, ... [would have] no knowledge.' " *Parke Davis & Co.,* 833 F.2d at 8 (quoting *Colon Prieto,* slip op. at 15 (Official English Translation)). Nor is there anything in the record to indicate that his failure to sue within the year was attributable to some unusual difficulty in procuring the names of the asbestos manufacturers, such as that the Navy had a policy of concealing them or that they were otherwise unobtainable. Kaiser was made aware by the magazine article of the plethora of asbestos lawsuits in the country including some by workers on Navy ships; the defendants were, in fact, among the asbestos manufacturers mentioned in the article. Assertions in Kaiser's appellate brief cannot take the place of materials in the summary judgment record itself. We therefore hold that by August 15, 1985 Kaiser had sufficient knowledge of facts from which to determine "the author of his injury ... so that he could know who to sue."

The Supreme Court has said that "[s]tatutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims comes in time to prevail over the right to prosecute them.' " *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (citations omitted) (quoting *Railroad Telegraphers v. Railway Ex-*

enced in his letter. While we understand that the distinction exists, for purposes of the statute of limitations, it is a distinction without a difference. Kaiser need not be aware of the full extent of his injury to be on notice that he has been injured. *See Delgado Rodriguez,* slip op. at

10 (Official English Translation). Knowledge of the calcifications in his lungs compatible with asbestos exposure was sufficient to satisfy that prong of the limitation statute's knowledge requirement.

*press Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). The Puerto Rico legislature has determined that injured plaintiffs must bring tort actions within a year of obtaining knowledge of their injuries, or forfeit the right to bring them. Because plaintiffs failed to bring their claims within the prescribed period, or to provide evidence which raises as a genuine issue whether Sol Kaiser had the requisite knowledge prior to August 15, 1985, one year before filing suit, we are obliged to agree with the district court that defendants were entitled to summary judgment.[5]

*Affirmed.*

**5.** Because we sustain the lower court's ruling that the statute of limitations bars plaintiffs' action, we need not consider appellees' arguments that plaintiffs lacked personal jurisdiction over them under Puerto Rico's long-arm statute or that plaintiffs had failed to identify the products which caused Kaiser's injury.