William MARIANI-GIRON, et al.,
Plaintiffs, Appellees,

v.

Heriberto ACEVEDO-RUIZ, etc., et al.,
Defendants, Appellants.

No. 88-1588.

United States Court of Appeals,
First Circuit.

Heard Oct. 31, 1988.

Decided June 23, 1989.

Paul B. Smith, Jr., San Juan, P.R., with whom Hector Rivera Cruz, Secretary of Justice, Rafael Ortiz Carrion, Sol. Gen., Jose Hamid Rivera and Saldana, Rey, Moran & Alvarado, Hato Rey, P.R., were on brief, for defendants, appellants.

Frank Rodriguez Garcia, Ponce, P.R., for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff William Mariani Giron brought this action under 42 U.S.C. § 1983 (1982) alleging that the defendant, Heriberto Acevedo Ruiz, the director of Puerto Rico's Commonwealth Civil Defense Agency ("CDA"), violated his rights under the First and Fourteenth Amendments in discharging him from his position as a zone coordinator for the CDA. After the district court denied Acevedo Ruiz's motion for summary judgment on the ground of

qualified immunity, Acevedo Ruiz filed this interlocutory appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985); *Unwin v. Campbell*, 863 F.2d 124, 130–33 (1st Cir. 1988). We hold that Acevedo Ruiz is entitled to qualified immunity and reverse the district court.

On April 18, 1980, Mariani Giron, an active member of Puerto Rico's New Progressive Party ("NPP"), was appointed zone coordinator of the Ponce region for the CDA which encompasses 16 municipalities. In the November 1984 gubernatorial election in Puerto Rico, the Popular Democratic Party ("PDP") defeated the NPP. Shortly thereafter, the newly elected Governor appointed Acevedo Ruiz, a member of the PDP, as director of the CDA. In a letter dated March 28, 1985, Acevedo Ruiz discharged Mariani Giron, stating as the reason for the discharge only that the position of CDA zone coordinator was classified as a "trust or confidence" position under P.R.Laws Ann. tit. 3, §§ 1349–1351 (1978). On April 11, 1985, Mariani Giron's former position was filled by a member of the PDP.

Mariani Giron subsequently brought this action alleging that Acevedo Ruiz violated his rights under the First and Fourteenth Amendments in discharging him from his position.[1] *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *See generally Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Seeking damages and reinstatement to his former position, Mariani Giron alleged he was terminated because of his affiliation with the NPP. After a hearing, the district court granted Mariani Giron's motion for a preliminary injunction of reinstatement. This court affirmed the

issuance of the preliminary injunction. *Mariani Giron v. Acevedo Ruiz*, 834 F.2d 238 (1st Cir.1987).[2] Acevedo Ruiz then moved in the district court for summary judgment, arguing that he was entitled to qualified immunity from Mariani Giron's claim for damages. The district court denied this motion, and Acevedo Ruiz filed this interlocutory appeal.

## I.

A threshold issue is whether this appeal is within our appellate jurisdiction. A court of appeals lacks power to entertain an appeal from a party who is not specified in the notice of appeal. *Torres v. Oakland Scavenger Co.*, —— U.S. ——, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988); *Kaiser v. Armstrong World Industries, Inc.*, 872 F.2d 512 (1st Cir.1989); *Gonzalez Vega v. Hernandez Colon*, 866 F.2d 519, 519 (1st Cir.1989); *Santos Martinez v. Soto Santiago*, 863 F.2d 174, 175 (1st Cir.1988). *See* Fed.R.App.P. 3(c). In this case, the caption of the notice of appeal dated May 18, 1988, identified defendants as follows:

HERIBERTO ACEVEDO–RUIZ, ET AL

Defendants

The body of the notice provided in pertinent part,

Notice is given that defendants hereby appeal to the United States Circuit Court of Appeals for the First Circuit from the order entered in this action on April 19, 1988, denying a motion for summary judgment filed by defendants on February 22, 1988. Said summary judgment motion is based on defendants' assertion of the qualified immunity of public officials, *Mitchell v. Forsyth*, 472 U.S. 511 [105 S.Ct. 2806, 86 L.Ed.2d 411] (1985).

There were a total of three defendants in the action below: Heriberte Acevedo Ruiz;

---

1. Joining Mariani Giron as plaintiffs were his wife, Iris Myrta Saes, and "their Conjugal Partnership." In addition, the complaint named not only Acevedo Ruiz as a defendant but also named Acevedo Ruiz's wife, Mabel Perez Acevedo, and "their Conjugal Partnership" as defendants.

2. Our opinion affirming the issuance of the preliminary injunction does not control our resolution of the issue of qualified immunity raised on this appeal. *Figueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1042 n. 6 (1st Cir.1988); *Goyco de Maldonado v. Rivera*, 849 F.2d 683, 686 (1st Cir.1988).

his wife, Mabel Perez Acevedo; and "their Conjugal Partnership." Neither the caption nor the body of the notice of appeal mentioned the wife or the partnership.

Because of this lack of specificity, Mariani Giron has moved to dismiss the appeal for lack of appellate jurisdiction. While we apparently lack jurisdiction over his wife and their conjugal partnership, as they are nowhere specified in the notice of appeal,[3] we do have jurisdiction over Acevedo Ruiz. The presence of his name in the caption, coupled with the statement in the body of the notice of appeal that "defendants hereby appeal," which incorporated by reference those defendants named in the caption, satisfied as to him the specificity requirement of Rule 3(c); we cannot say that Acevedo Ruiz "was never named or otherwise designated, however inartfully, in the notice of appeal" even though the "ET AL" and the plural use of "defendants" left us in doubt as to the remaining defendants seeking to appeal. *Torres,* 108 S.Ct. at 2409. This court has implicitly held on previous occasions that it has appellate jurisdiction over a party named in the caption of the notice of appeal. *Marin–Piazza v. Aponte–Roque,* 873 F.2d 432 (1st Cir.1989); *Santos Martinez v. Hernandez Colon,* 863 F.2d 174 (1st Cir.1988); *Kaiser v. Armstrong World Industries, Inc.,* 872 F.2d 512, 514 (1st Cir.1989). In these three cases, the intent to appeal of the party named in the caption was manifest from a reading of the body of the notice of appeal and the caption. *See also Ford v. Nicks,* 866 F.2d 865, 869–70 (6th Cir.1989) (ruling, without discussion, that a party named only in the caption had been specified as a party taking an appeal); *Cotton v. U.S. Pipe & Foundry Co.,* 856 F.2d 158, 160–63 (11th Cir.1988) (court has jurisdiction over parties "named on face of the appeal"). While each situation must be looked at separately, we disagree with the blanket generalization in *Allen Archery, Inc. v. Precision Shooting Equipment, Inc.,* 857 F.2d 1176, 1177 (7th Cir.1988), that "naming [appellant] in the caption ... will not do." The caption should be looked at as a part of the entire notice. Since the present notice, including its caption, names as appellant the principal defendant, Acevedo Ruiz, we hold that we have jurisdiction over Acevedo Ruiz's appeal.

## II.

As a general rule, government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). A court must look to the "objective legal reasonableness of an official's conduct, as measured by reference to clearly established law," to determine whether the doctrine of qualified immunity applies. *Id. See also Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Mariani Giron's section 1983 action arises under the First Amendment which prohibits the patronage discharge of public employees except where "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294. *See also Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2686–87. Acevedo Ruiz argues that he is entitled to qualified immunity because, at the time of Mariani Giron's discharge in March 1985, the law was not clearly established that political affiliation was not an appropriate requirement for the effective performance of the position of CDA zone coordinator for the Ponce region.

This court has recently described the qualified immunity inquiry in the context of political firings which occurred in 1985:

---

3. Whether we have jurisdiction over Acevedo Ruiz's wife and the conjugal partnership is immaterial since they had no personal involvement in the alleged illegal conduct; they were purportedly named as defendants because, according to the complaint, "[a]ny judgment handed down by [the district court] for plaintiffs will have to be executed on the property belonging to the Conjugal Society Acevedo–Perez...." Their liability for damages is thus wholly derivative of an award of damages being entered against Acevedo Ruiz.

the question ... is "whether [at the time of dismissal] it was clearly established that employees in the *particular positions* at issue, in light of the responsibilities inherent in those positions, were protected from patronage dismissal." ... [A] defendant enjoys "qualified immunity" as long as the job in question "*potentially* concerned matters of partisan political interest and involved at least a *modicum* of policymaking responsibility, access to confidential information, *or* official communication." ... And, we have said that "defendants will normally enjoy qualified immunity from damage liability in upper-level, managerial-type job dismissal cases, cases where the jobs in question are not purely technical or scientific in nature."

*Figueroa–Rodriquez v. Lopez–Rivera*, 878 F.2d 1478, 1480 (1st Cir.1989) (en banc) (emphasis in original) (quoting *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1259 (1st Cir.1987), and *Juarbe–Angueira v. Arias*, 831 F.2d 11, 14 (1st Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988)). *See also Figueroa–Rodriquez v. Aquino*, 863 F.2d 1037 (1st Cir.1988).

Applying these criteria to the instant case, we do not think it was clearly established in March 1985 that political affiliation was not a requirement for Mariani Giron's job. The Puerto Rico Civil Defense Act states that it is the public policy of the Commonwealth to provide

all necessary measures for the protection and safety of the Puerto Rican people in any situation of emergency or disaster that may affect them. To such ends, the Government of the Commonwealth of Puerto Rico contemplates to keep in constant preparation a well-trained and orientated organization which, in case of a grave abnormality in our Island, knows how to and can act rapidly and effectively to ward off evil.

P.R.Laws Ann. tit. 25, § 171a (1979). To accomplish this vital task, the Act created the CDA which is attached to the Governor's Office. P.R.Laws Ann. tit. 25, § 171c. The CDA is headed by the Commonwealth Director who is appointed by and serves at the pleasure of the Governor. P.R.Laws Ann. tit. 25, § 171d. The Commonwealth Director is empowered to prescribe regulations and adopt contingency plans in order to protect lives and property in the event of natural or man-made disasters. P.R.Laws Ann. tit. 25, §§ 171e, 171f, 171n. Under the Act as well as these regulations and plans, the CDA is given wide-ranging powers to allow it to respond quickly and effectively to disasters and in coordinating rescue operations. P.R.Laws Ann. tit. 25, §§ 171e(G), 171j, 171k, 171*l* 171m. The Act also grants the Governor sweeping powers "in situations of emergency or disaster" which "[h]e may delegate to the Commonwealth Director and establish subsequent delegations of any authority conferred upon him by this chapter." P.R.Laws Ann. tit. 25, §§ 171q, 171s, 171t.

As a zone coordinator for the Ponce region, Mariani Giron was at the fifth level of CDA's organizational structure.[4] According to Mariani Giron's testimony at the preliminary injunction hearing, his duties as a zone coordinator were as follows:[5]

A. *Administrative Functions.* Mariani Giron basically directed, organized and developed Civil Defense programs for

---

**4.** The record indicates that the chain of command above Mariani Giron was 1) the Governor; 2) the Commonwealth Director of the CDA; 3) the Assistant Commonwealth Director; and 4) the Assistant Director of Operations.

**5.** Unlike many of the political firing cases which have reached this court, *see, e.g., Mendez–Palou,* 813 F.2d at 1260, the record does not contain the plaintiff's official job description, although the record does contain the official job description of plaintiff's predecessor. At the hearing on plaintiff's motion for a preliminary injunc-

tion, Mariani Giron testified as to how the duties he performed as zone coordinator compared to the duties described in his predecessor's job description. In our analysis of the qualified immunity question in this case, we adopt Mariani Giron's version of his inherent job duties, resolving any ambiguity regarding those duties in his favor. *See Figueroa–Rodriguez v. Aquino,* 863 F.2d at 1041 (although some facts in dispute regarding plaintiff's job responsibilities, defendant was entitled to qualified immunity under any version of the evidence).

the municipalities in his zone. This included 1) taking part in developing and executing "emergency plans pursuant to needs;" 2) dealing in "communications;" 3) submitting reports regarding a program for radiological defense; 4) coordinating the attendance of educational programs by local directors, volunteers and other personnel; 5) possibly supervising indirectly the municipalities of the zone in the context of directing, organizing and developing Civil Defense programs.

B. *Natural and Nuclear Disasters.* Mariani Giron prepared, coordinated and evaluated "operational plans at the zone level." He organized and developed practice rehearsals and drills to test the effectiveness and adequacy of the plans and resources. He also held meetings with the Zone Emergency Committees and the municipalities "in order to hand out instructions and counseling in accordance with the established norms."

C. *Operations.* Mariani Giron organized, directed and coordinated operations at the zone level pursuant to established policies adapted to specific situations. He coordinated the assignment, delegation and distribution of jobs, tasks, and assignments to agencies, individuals, associations and institutions in emergency operations, and also coordinated the utilization of human, fiscal and material resources. He organized and coordinated the participation of state and local agencies in order to provide essential services and lessen the loss of life and property and uneasiness.

D. *Communications.* Mariani Giron recommended and promoted studies of communication facilities and promoted the installation of radiotelephone systems, or microwave and other means to be used in critical situations and emergencies. He also prepared and submitted communications plans.

In addition, under P.R. Laws Ann. tit. 25, § 171p, Mariani Giron, as a zone coordinator, supervised and advised the municipal civil defense directors in his region regarding their responsibility to organize and ad-

minister the Voluntary Civil Defense Corps for each municipality.

In our view, the CDA's zone coordinator for the Ponce region holds a job that *"potentially* concern[s] matters of partisan political interest...." *Figueroa–Rodriguez v. Lopez–Rivera,* 878 F.2d at 1480 (emphasis in original). It is an upper management level position in an agency required to discharge vital responsibilities in concert with state and local municipalities and agencies, and whose performance during emergencies will attract great public attention and scrutiny. Rather than being "purely technical or scientific in nature," the job involves "at least a *modicum* of policymaking responsibility, access to confidential information, *or* official communication." *Id.* (emphasis in original). As a zone coordinator, Mariani Giron was the Commonwealth Director's representative in the Ponce region. According to his own testimony, he was the "voice" of the CDA's Commonwealth Director in the Ponce region. Mariani Giron also testified that his inherent duties in some part involved developing and executing emergency plans, as well as preparing, coordinating and evaluating "operational plans at the zone level." Although his duties were in large measure limited to coordinating and executing previously established regulations and policies, he had the authority to organize, direct and coordinate operations at the zone level pursuant to established policies *adapted to specific situations,* thus *potentially* giving him leeway when confronted with unforeseen emergencies. Finally, while not determinative in deciding whether Acevedo Ruiz is entitled to qualified immunity, we give "some deference" to the fact that the position of zone coordinator was one of "trust or confidence" under the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, §§ 1349–1351. *Figueroa–Rodriguez v. Lopez–Rivera,* 878 F.2d at 1481; *Jimenez Fuentes,* 807 F.2d at 246.

To be sure, the CDA is a public safety agency and presumably not "political" in the traditional sense of the word.[6] Plain-

---

6. Indeed, the Puerto Rico Civil Defense Act makes it a misdemeanor for any person who,

tiff, however, had been an active member of the NPP when the previous Governor, a member of the NPP also, had appointed him. The job of CDA zone coordinator *"potentially* concern[s] matters of partisan political interest" in the same sense that the zone fire chiefs in *Figueroa–Rodriguez v. Lopez–Rivera,* 878 F.2d at 1484 held such jobs:

> High level officials of major service-oriented departments in municipal and state government must adequately take into account competing public needs, matching them with available resources. They must react with sensitivity to anticipated, or actual, public criticisms of their decisions—all of which is to say that they have *politically sensitive* jobs. As the court in *Tomczack v. City of Chicago,* 765 F.2d 633 (7th Cir.1985) recognized, to believe that a high official in a (technical-sounding) water department, or sewer authority, parks department, or similar activity need not possess these qualities is to fail to understand the realities of local political life. Of course, we recognize that a fire department, like a police department, is an agency that is mostly concerned with public safety and law enforcement. But, we do not believe that fact alone a sufficient distinction to make a difference, at least not in respect to quite high officials who must respond

sensitively to the public, and therefore take account of the public's perceptions of the manner in which the department fulfills its responsibilities.

Because this reasoning applies with equal force to the CDA's zone coordinators, we cannot say it was clearly established at the time of Mariani Giron's discharge that the position of CDA zone coordinator was not one of "those upper level management positions that a newly elected governor must constitutionally be allowed the option of filling with like-minded colleagues if meaning is to be given to the electoral mandate." *Figueroa–Rodriguez v. Aquino,* 863 F.2d at 1041. *See also Juarbe-Angueira,* 831 F.2d at 13–14.

Our view that the law did not clearly prohibit Mariani Giron's discharge is strongly supported by this court's opinion in *Cordero v. De Jesus–Mendez,* 867 F.2d 1 (1st Cir.1989).[7] In *Cordero,* we held that the defendant, the Mayor of the Municipality of Moca, Puerto Rico, did not violate the plaintiff's First Amendment rights in discharging him from his job as the municipality's civil defense director given the policy-making nature of the job.[8] *Id.* at 12–13. This ruling, regarding a position that is comparable to the one at issue in the instant case,[9] bolsters Acevedo Ruiz's claim to qualified immunity. If the discharge of

"[b]eing an employee of any civil defense organization, participates in politico-partisan activities and exerts political pressure while in the discharge of his work." P.R.Laws Ann. tit.25, § 171y(d).

7. In his brief, Mariani Giron cites several decisions of the Supreme Court of Puerto Rico to support his argument that the federal Constitution clearly prohibited his discharge. While we will consider these decisions for their persuasive effect, "they are not conclusive as to the state of the law when [plaintiff] was fired" as they "go further than do most circuit and district court interpretations of *Elrod–Branti* in refusing to allow political firings at the higher levels of government." *Rodriguez Rodriguez v. Munoz Munoz,* 808 F.2d 138, 142 (1st Cir.1986). *See also Juarbe-Angueira,* 831 F.2d at 14.

8. Under the Puerto Rico Civil Defense Act, each municipality in the Commonwealth is to establish a "Municipal Civil Defense Agency" administered by a municipal director appointed by the Mayor "in consultation with the Commonwealth Director." Each municipal agency is to prepare

contingency plans in the event of a disaster, assuring that such plans are in accordance with the CDA's contingency plans. The municipal agencies may also prescribe, subject to approval by the Commonwealth Director, regulations necessary for the civil defense of the municipality. P.R.Laws Ann. tit. 25, § 171o.

9. Although Mariani Giron testified at the preliminary injunction hearing that he had no direct authority over municipal civil defense directors, at least in one respect the zone coordinator has supervisory authority over municipal directors: "It shall be the responsibility of the Municipal Defense Director to organize and administer the Voluntary Civil Defense Corps *subject to the supervision and advice of the Zone Director of the Commonwealth Agency.*" P.R. Laws Ann. tit. 25, § 171p (emphasis added). (Accordingly to Mariani Giron's brief, "[t]he position was designated 'Zone Director' before 1977, when it was changed to 'Zone Coordinator'....")

a municipal civil defense director is not prohibited under *current* legal standards, it cannot be said that under the legal standards existing in March 1985 Mariani Giron's discharge was clearly prohibited. *See also Juarbe-Angueira,* 831 F.2d at 16 (collecting cases holding defendant to be entitled to qualified immunity).

We consequently hold that the district court erred in not granting Acevedo Ruiz's motion for summary judgment on the ground that he was entitled to qualified immunity from damages in Mariani Giron's section 1983 action.

*Reversed.*

TORRUELLA, Circuit Judge (concurring in part; dissenting in part).[10]

I concur in Part I of this decision but respectfully dissent as to the balance of the opinion.

I am forced to dissent not only because I am of the view that no reasonable person could conclude that "party affiliation is an appropriate requirement for the effective performance of the public office [here] involved," *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980), that of a fifth level employee engaged in non-partisan civil defense activities, but more specifically because no reasonable person would have concluded that discharging this office holder "does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

As the majority acknowledges in a footnote, *ante* at p. 1118 n. 6, it is a crime under the law of Puerto Rico for any person who, "[b]eing an employee of any civil defense organization participates in politico-partisan activities and exerts political pressure while in the discharge of his work." 25 L.P.R.A. § 171y(d). If appellee's position is subject to such specific

partisan prohibitions, how could one conclude that party affiliation is an appropriate requirement for the effective performance of his office? How can partisan considerations even be of *potential* concern under these circumstances?

By its decision today, this court has politicized a position which was deliberately intended by the Legislature of Puerto Rico to be non-partisan.

I dissent.

---

10. I take note of the fact that this is the second interlocutory appeal of this case to this court. *See Mariani Giron v. Acevedo Ruiz,* 834 F.2d 238 (1st Cir.1987). I believe this practice of piecemeal interlocutory appeals should be discouraged, not only because it is an unnecessary drain on our limited judicial resources, but also because it places an undue burden upon an economically unequal litigant.