**Bruce MONKS, Frederick Balkwill, Margo Balkwill, Michael Smigulec, and the Estate of Leo Russ, by Serena Russ, Personal Representative, Plaintiffs,**

v.

**Carl MARLINGA, in his capacity as Prosecuting Attorney for Macomb County, and The Macomb County Board of Commissioners, Defendants.**

No. 89–CV–30042–PH.

United States District Court,
E.D. Michigan, S.D.

Feb. 14, 1990.

**750**

William Boyer, Boyer, Churilla, & Dawson, Sterling Heights, Mich., for plaintiffs, Bruce Monks and Michael Smigulec.

Glen N. Lenhoff, Law Office of Glen N. Lenhoff, Flint, Mich., for plaintiffs, F. Balkwill, M. Balkwill, and Estate of Russ.

George E. Brumbaugh, Jr., Asst. Corp. Counsel, Macomb County, Mt. Clemens, Mich., for defendants.

Jaffe, Snider, Raitt & Heuer, P.C., Detroit, Mich., for defendants, Melanie T. La-Fave, Jeffrey G. Heuer, and Jennifer E. Anderson.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Pending is the defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, requesting dismissal of the plaintiffs' claims arising out of their termination as assistant prosecutors for Macomb County, Michigan. Briefly, all plaintiffs assert that the defendant Marlinga, subsequent to his election as County Prosecutor, failed to reappoint the plaintiffs because of their age; the plaintiffs Frederick and Margo Balkwill and the Estate of Leo Russ additionally assert that their terminations arose from (1) their political affiliation; and (2) their union activities. The Balkwills and the Estate of Russ also charge Marlinga with tortious interference with contract; lastly, the Balkwills claim that Marlinga slandered them following their termination.

The defendants, in response, argue first, that the plaintiffs have failed to put forth any evidence of age discrimination on Mar-

linga's behalf; second, that any political affiliation claim must fail because Marlinga rightfully considered this factor in appointing his assistant prosecutors; third, that any union activity claim is untenable since the allegations fail to set forth any activities protected under the first amendment of the United States Constitution, and even if such allegations exist the relevant union activities played no role in Marlinga's decisionmaking; fourth, that the Balkwill's slander claim is barred by the statute of limitations; and fifth, that Marlinga is immune from liability under 42 U.S.C. § 1983.

The plaintiffs have responded to the defendants' motion[1], and the Court is now prepared to rule.

## I.

In determining whether summary judgment is appropriate, the Court must be satisfied that no genuine issue of material fact exists, and that absent any such issue judgment may enter as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the burden of informing the Court of the basis for its motion, yet is not required to provide materials negating an opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant satisfies this initial requirement, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party," and "[i]f [such] evidence is merely colorable, ..., or is not significantly probative, ..., summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted).

## II.—TERMINATION STATUS

■ Initially, the Court must determine whether Marlinga's termination of the plaintiffs' employment is properly treated as a discharge or as a failure to rehire. Michigan law provides that

[t]he prosecuting attorney shall, within 10 days after entering on the execution of the duties of his office, file in the office of the county clerk a statement in writing of his appointments [of assistant prosecutors]....

Mich.Comp.Laws Ann. § 49.33. Additionally,

[s]aid assistant prosecuting attorneys and other employees appointed by said prosecuting attorney under this act shall hold office during the pleasure of the prosecuting attorney.

Mich.Comp.Laws Ann. § 49.35. Marlinga contends that these provisions establish that under relevant law, a newly-elected prosecutor's retention or dismissal of existing assistant prosecutors involves hiring, as opposed to firing, decisions. The plain language of the pertinent legislation supports Marlinga's argument, and if the analysis ended here, the Court would concur therewith.

Recent authority in this circuit, however, directs that although government employment termination may technically involve a failure to rehire, the circumstances surrounding the employment may render such termination a "constructive discharge." *Christian v. Belcher*, 888 F.2d 410, 416 (6th Cir.1989), citing *Branti v. Finkel*, 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574 (1980); *Messer v. Curci*, 881 F.2d 219, 221 (6th Cir.1989). In *Christian*, while state law provided that the plaintiff's employment as a county flood plain administrator and building inspector terminated automatically at the end of each executive administration, the court nevertheless found that in light of the otherwise continuous nature of the plaintiff's employment, the plaintiff's political patronage discharge action was "properly regarded as a 'termination' case rather than a 'hiring' case." 888 F.2d at 416. The Court believes that this reasoning applies to the instant dispute. Although state law suggests that assistant prosecutors' employment automatically ends upon each prosecutor's elec-

---

1. The Court notes that the plaintiffs Monks and Smigulec, claiming only age discrimination, have filed no separate response to the defen-

dants' motion, instead concurring in the remaining plaintiffs' response.

tion, such positions involve essentially continuous employment. Thus, an assistant prosecutor's termination coincident with the election of a new prosecutor is appropriately considered a discharge. Furthermore, *Branti* directs that automatic termination provisions in governmental employment laws do not mandate the application of any "less stringent standard" of analysis utilized in failure to reappoint cases. 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6. The Court therefore treats the plaintiffs' action as alleging wrongful discharge.

### III.—FIRST AMENDMENT LABOR ACTIVITIES CLAIMS

■ The plaintiffs allege that "Carl Marlinga discharged Leo Russ, Frederick Balkwill and Margo Balkwill in substantial part because the said three persons were active in union activities." Second Amended Complaint at para. 38. Marlinga filed an affidavit disavowing this allegation, asserting his ignorance of the plaintiffs' participation in any union activities at the time of their discharge. Additionally, Marlinga asserts that the vagueness of the plaintiffs' union activity allegations renders such inadequate to state a claim for relief, therefore requiring dismissal of these claims under Fed.R.Civ.P. 12(b)(6) (Rule 12(b)(6)).

Concerning the adequacy of the complaint, the Court notes that under Rule 12(b)(6), all factual allegations are taken as true, and all reasonable inferences are drawn in the nonmoving party's favor. *Miree v. Dekalb County, Ga.*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Upon reviewing the complaint within this framework, the Court should deny a 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The plaintiffs cite *Hickman v. Valley Local School Dist. Bd. of Ed.*, 619 F.2d 606 (6th Cir.1980), as authority for the proposition that their complaint states a claim for violation of first amendment rights to engage in union activities. As Marlinga correctly notes, however, *Hickman* preceded the Supreme Court's analysis of public employees' first amendment rights in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and the Sixth Circuit's application of *Connick* to a claim of suspension arising from participation in union activities. *Boals v. Gray*, 775 F.2d 686 (6th Cir.1985). This Court therefore references *Connick* and *Boals*, as opposed to *Hickman*, in examining whether the plaintiffs' complaint states a claim for which relief may be granted.

Initially, the Court must determine whether the alleged basis for the plaintiffs' discharge "was speech or association touching on a matter of public concern." *Boals*, 775 F.2d at 693. If the pertinent speech or association does not involve public concern, "it is unnecessary ... to scrutinize the reasons for [a plaintiff's] discharge." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689 (footnote omitted). The current plaintiffs' complaint contains nothing to indicate the character of the relevant union activities. Since union activities do not *per se* touch on matters of public concern, *see Boals* at 693, and since Marlinga could legally discharge the plaintiffs for engaging in union activities that do not affect public concern, the allegation that Marlinga "discharged [the plaintiffs] in substantial part because the said three persons were active in union activities" fails to state a claim upon which relief may be granted. That is, even if evidence exists showing that Marlinga considered the plaintiffs' union activities in discharging them, thereby proving the plaintiffs' allegations, such evidence, by itself, would not allow the plaintiffs to prevail on their first amendment/union activity claim. Thus, the plaintiffs "can prove no set of facts in support of *their claim*" entitling them to relief. *Conley, supra* (emphasis added). This claim is therefore dismissed.

### IV.—POLITICAL AFFILIATION

■ The plaintiffs allege that Marlinga discharged them because of their political

affiliation [2]. Under *Branti v. Finkel, supra,* such terminations are actionable unless "party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295.

The Court's research has uncovered no precedent squarely addressing whether political affiliation is pertinent to the performance of the duties of an assistant county prosecutor appointed pursuant to Michigan law. The language of the relevant statutes, however, suggests that an assistant prosecutor's position involves, at a minimum, "a *modicum* of policymaking responsibility, access to confidential information, *or* official communication." *Mariani–Giron v. Acevedo Ruiz,* 877 F.2d 1114, 1117 (1st Cir.1989) (emphasis in original). Specifically, assistant prosecutors

> perform any and all duties pertaining to the office of prosecuting attorney at such time or times as he may be required so to do by the prosecuting attorney and during the absence or disability of the prosecuting attorney....

Mich.Comp.Laws Ann. §§ 49.42, 49.52. This language supports the view that political affiliation is a pertinent requirement for the effective performance of an assistant prosecutor's duties.

The plaintiffs' sole argument against a finding that political affiliation is relevant to their duties is that "[a]s Assistant Prosecutors who specialized in trying cases, [plaintiffs] were not policy makers." Plaintiffs' Brief at 8. Yet, this contention alone cannot prevent a finding that political affiliation influenced the performance of the plaintiffs' duties. The mere fact that assistant prosecutors try cases under the direction of the prosecutor indicates that political loyalty is important to the office of assistant prosecutor. Every prosecuting attorney, as an elected official, necessarily possesses a political agenda. That agenda is manifested through the handling of criminal cases within such prosecutor's county. Thus, the Court cannot escape the conclusion that political affiliation is pertinent to the effective performance of an assistant prosecutor's duties. Furthermore, the Court believes that the plaintiffs' assertion regarding policymaking fails to confront the actual issue: whether political affiliation is material to the performance of the *public office* involved. The plaintiffs in no manner dispute the description of assistant prosecutors' duties contained in the relevant statute. There exists, therefore, no genuine issue of fact regarding the approved duties of assistant prosecutors under Michigan law. As the Court believes these duties may be influenced by the political affiliation of such prosecutors, the Court finds that the defendants are entitled to summary judgment on the plaintiffs' political affiliation claims.

## V.—QUALIFIED IMMUNITY

■ The defendant Marlinga additionally asserts that he is entitled to qualified immunity from liability respecting the plaintiffs' section 1983/political affiliation claims [3]. Generally, state officers engaging in discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). In determining whether a right is "clearly established," courts examine whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640,

---

**2.** The Court finds irrelevant the fact that the plaintiffs and the defendant are members of the same political party. As one court recently noted, such "narrow interpretation of 'political affiliation' is completely inconsistent with the reasoning of *Branti,* which repeatedly referred to 'beliefs,' 'commitments,' and 'partisan political interests and concerns.'" *Dicks v. City of Flint,* 684 F.Supp. 934, 940 n. 4 (E.D.Mich.1988).

**3.** The Court does not address Marlinga's claim of qualified immunity concerning the plaintiffs' first amendment/union activity claim in light of the Court's dismissal of this claim under Fed.R. Civ.P. 12(b)(6).

107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, a right is clearly established if "in the light of pre-existing law the unlawfulness [of an official's action is] apparent." *Id.* (citations omitted).

In *Mariani–Giron, supra,* the court noted that political affiliation discharge defendants enjoy " ' "qualified immunity" as long as the job in question *"potentially* concerned matters of partisan political interest and involved at least a *modicum* of policymaking responsibility, access to confidential information, *or* official communication." ' " 877 F.2d at 1117 (emphasis in original) (citations omitted). While *Mariani–Giron* is not binding on this Court, it is nevertheless appropriate to use its reasoning as guidance in resolving the instant dispute, given the absence of Sixth Circuit authority directly on point. The plaintiffs cite only *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti, supra,* as support for their argument that in 1984, it was clearly established that political affiliation was not a requirement for the effective performance of the assistant prosecutor's job. Neither *Elrod* nor *Branti,* however, addressed the precise issue of the effect of political affiliation on a Macomb County assistant prosecutor's job performance. Thus, neither is dispositive of the current qualified immunity issue.

As noted in section IV of this opinion, this Court has uncovered no precedent discussing the relevance of political affiliation to the performance of an assistant prosecutor's duties. Absent such authority, the Court concludes that the principle that political affiliation was not a requirement for the effective performance of the assistant prosecutor's position was not clearly established in 1984, and in fact is not clearly established today. The defendant Marlinga is therefore immune from liability for the plaintiffs' section 1983 political affiliation discharge claims.

## VI.—SLANDER

■ This issue requires little attention. The Balkwills raised this claim for the first time in their second amended complaint,

filed more than one year following the alleged slanderous conduct. Nowhere in the original complaint did the Balkwills assert facts related to the alleged slander, which is asserted to have occurred some time following their termination. Under Fed.R. Civ.P. 15(c),

> [w]henever the claim … asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Since the Balkwills' slander claim did not so arise, and since Michigan's statute of limitations for slander is one year from the date of accrual, Mich.Comp.Laws Ann. § 600.5805(7), the Court dismisses this claim as untimely.

## VII.—REMAINING STATE LAW CLAIMS

Since no federal question remains, the Court exercises its discretion and remands the plaintiffs' remaining state law claims to state court. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

## VIII.—CONCLUSION

Based upon the preceding, the Court DISMISSES the plaintiffs' claims under 42 U.S.C. § 1983 and for state law slander, and REMANDS the plaintiffs' remaining state law claims to state court for resolution.

IT IS SO ORDERED.