**CONSTRUCTION INTERIOR SYSTEMS, INC., Plaintiff,**

v.

**The DONOHOE COMPANIES, INC., and Federal Center Plaza Corporation, Defendants.**

Civ. A. No. 90–2551 (HHG).

United States District Court, District of Columbia.

Dec. 23, 1992.

**30**

Charles G. Atkins, Strauss & Troy, Cincinnati, OH, A. Thomas Carroccio, Santarelli, Smith & Carroccio, Washington, DC, for plaintiff.

Richard F. Smith, Jonathan D. Shaffer, Smith, Pachter, McWhorter & D'Ambrosio, Vienna, VA, for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

### I

### *Introduction*

This case involves breach of contract and unjust enrichment claims brought by the plaintiff Construction Interior Systems, Inc. (CIS), against the defendants Donohoe Companies, Inc. (Donohoe) and Federal Center Plaza Corporation (Federal Center).

Before the Court are a number of outstanding motions which must be resolved before trial. Oral argument was heard on several of these motions on October 15, 1992.

This Memorandum and attached Order address the plaintiff's motion for reconsideration of the Court's April 9, 1992 Order granting of partial summary judgment and the defendants' separate motion for partial summary judgment on Counts I–III of the first amended complaint. This Memorandum and attached Order also resolve the plaintiff's motion for leave to file a second amended complaint and all subsequent motions filed by the defendants regarding Count IV of the this new complaint.

### II

### *Background*

Donohoe Construction Company, a general contractor, awarded Construction Interi-or Systems (CIS) a subcontract in June 1987 to refurbish 262 guest rooms and baths as well as seven corridors at the Georgetown Holiday Inn. The total contract was valued at $237,323.

The Donohoe Construction Company, a division of the Donohoe Companies, Inc., performed renovation and refurbishment work on this Hotel. The defendant Federal Center Plaza is the general partner of 2101 Wisconsin Associates, a partnership which owns the Georgetown Holiday Inn.

The plaintiff, through the first two complaints, alleges breach of contract and unjust enrichment against both defendants. The plaintiff contends that the defendants failed to supply CIS with adequate rooms for renovation and comply with other conditions of the contract. In Count I, CIS seeks over $80,000 for work completed and billed, and approximately $200,000 for unresolved change orders, construction delays and subcontractor expenses. Counts II and III allege unjust enrichment for the work allegedly completed, but not paid for by the defendants. The original complaint was filed on September 12, 1990 and the first amended version was submitted to the Court on November 5, 1990.

The defendants have filed a counterclaim for over $300,000 alleging that CIS failed to deliver renovated rooms in a timely fashion and failed to complete work in accordance with the terms of the contract. They allege that CIS lost or destroyed furniture, failed to pay room charges incurred by CIS workers and caused a substantial loss of revenue.

On May 13, 1992, the plaintiff filed a motion for leave to file a second amended complaint. This new complaint contains a fourth count, charging that Donohoe tortiously interfered with CIS's business relations with other hotel operators.

For the reasons stated below, the Court denies the plaintiff's motion for reconsideration of the partial summary judgment order entered on April 9, 1992, and also denies the defendants' separate motion for partial summary judgment on Counts I–III.

Furthermore, the Court grants the plaintiff's motion for leave to file a second amended complaint. However, the new count in this complaint, alleging tortious interference with contract, is barred by the statute of limitations and is consequently dismissed. All of the defendants' other motions pertaining to the tortious interference claim are dismissed as moot.

## III

### Motion to Reconsider

On March 14, 1992 the defendants moved for partial summary judgment on all of the plaintiff's claims which arose prior to August 25, 1987. The defendants based this motion on releases CIS signed upon receipt of partial contract payments by Donohoe. These releases explicitly waived "any and all" rights and claims of CIS for work done up to August 25, 1987. The terms of the releases specifically encompass any claims related to "extra work or change orders."

Under Local Rule 108(b) and Rule 6(e) of the Federal Rules of Civil Procedure, CIS's opposition to this summary judgment motion was due on March 30, 1992. CIS failed either to respond by that date or to move for an enlargement of time within which to file an opposition. Consequently, on April 9, 1992, this Court granted the defendants' partial summary judgment motion.

On April 28, 1992, CIS filed a motion seeking reconsideration of the April 9, 1992 order pursuant to Rule 60 of the Federal Rules of Civil Procedure. The applicable provisions of Rule 60 authorize a court to relieve a party from an order for "(1) mistake, inadvertence, surprise, or excusable neglect ... or (6) for any other reason justifying relief." Fed.R.Civ.P. 60.

The plaintiff contends that the illness of CIS President John Penker prevented them from properly responding in time. Counsel confesses that he was unaware of Local Rule 108(b) and now moves the Court to excuse his failure to respond.

■ The Court of Appeals has cited three factors to be considered when a Rule 60 motion for reconsideration is before a court. *See Jackson v. Beech,* 636 F.2d 831,

836 (D.C.Cir.1980). Specifically, the trial court is to examine (1) whether the default was willful, (2) the degree of prejudice to the opposing party, and (3) whether the alleged pleading was meritorious. *Id.*

The fact specific nature of this analysis has resulted in precedents both denying and granting reconsideration of a court order entered because of one party's failure to respond. *Compare Betters v. Stickney,* No. 91–1405, 1991 WL 241895, 1991 U.S. Dist.Lexis 14984 (D.D.C. October 22, 1991) ("slovenly practices" of counsel should not deprive party's right to hearing on the merits) *with Lepkowski v. United States Dep't of Treasury,* 804 F.2d 1310 (D.C.Cir.1986) (denial of reconsideration affirmed where trial court made several unsuccessful attempts to obtain an opposition memorandum); *Davidson v. Columbia Hosp. For Women Medical Ctr., Inc.,* 1991 WL 277434, (D.D.C. December 11, 1991) (reconsideration denied where attorney failed to comply with Local Rule 108(b)); *Byrd v. City of Fayetteville,* 110 F.R.D. 71 (E.D.N.C.1986), *aff'd,* 819 F.2d 1137 (4th Cir.1987) (failure to comply with local rules in responding to summary judgment does not constitute excusable neglect).

■ In this case, the movant has failed to demonstrate that it is entitled to relief based on the criteria set forth in *Beech.* With respect to the first factor, counsel for CIS strenuously asserts that his disregard of Local Rule 108(b) was not willful. Without making a specific finding on this issue, the Court notes that during the period when CIS's response to the summary judgment was already past due, CIS twice filed discovery related pleadings with the Court. In one of these pleadings CIS acknowledged its failure to respond and promised to file an opposition in the near future. *See* April 21, 1992 "Reply to Defendants' Opposition to CIS's Motion to Enlarge Time for Discovery" at 7. If nothing else, CIS was aware that the Court might be curious as to why it had failed to respond to a pending motion. Other conduct by CIS during the course of this litigation has evi-

denced disregard for Court rules and procedures.[1]

Turning to the second prong, it is clear that the defendants will be prejudiced if this Court grants the motion to reconsider. The defendants have prepared their trial strategy based on the assumption that they would not be litigating claims arising prior to August 25, 1987.

The plaintiff's failure properly to oppose motions submitted to the Court have placed the defendants in the unenviable position of having the scope of this case dramatically expanded shortly before trial. According to defense counsel, litigation of these new claims would double both the time needed to prepare for trial and the number of documents to be introduced. Granting the motion to reconsider would also require a reopening of discovery and inevitable discovery disputes if the track record of this litigation is any indication. The time, expense, and inconvenience to the defendants and the Court constitutes prejudice.

The plaintiff's conduct also compromises the judicial system as a whole and is unfair to other litigants appearing Court. *See Lepkowski, supra,* 804 F.2d at 1313 (violation of rule requiring response to motion in ten days by itself "indicates prejudice to an already overburdened system of litigation"; *Ohliger v. United States,* 308 F.2d 667, 667–68 (2d Cir.1962) (court has an "obligation to other litigants whose cases are necessarily delayed" by disregard for court rules).

On the third, and perhaps most important criterion, CIS has failed to demonstrate that the purported opposition to the defendants' summary judgment motion is meritorious. CIS does not deny the authenticity of the release forms at issue. These forms clearly and unambiguously state that CIS waives "any and all claims" for work done prior to the date contained in the release form. CIS conceded at oral argument that the release forms are not ambiguous on their face.

Instead, CIS urges the Court to look beyond the actual language of the release forms to find the ambiguity CIS asserts. CIS claims that the parties signed these forms with the implicit understanding that they did not actually waive CIS's right to payments for change orders and delay claims. In essence, CIS contends that the release forms apply only to work performed under the original terms of the contract and that the broad language of the release forms is meaningless.

In support of their contention that the parties shared this interpretation, CIS cites an October 2, 1987 payment it received from Donohoe for change order work done prior to August 25, 1987. As explained below, this payment does not support CIS's position. CIS has not offered the Court any evidence that Donohoe made payments after the date upon which the last releases were signed for work covered by those releases.

With regard to the October 2, 1987 payment, CIS's own exhibits demonstrate that on September 29, 1987 Donohoe issued a check to CIS for change orders incurred during June and July of that summer.[2] After receiving that check, CIS signed, on October 6, 1987, a release form waiving "any and all" claims arising from work done prior to August 25, 1987. Thus, Donohoe made this payment before CIS executed the release form waiving *all* claims arising before August 25, 1987. *See* Plaintiff's Motion to Reconsider, Exhibit 6.

Contrary to CIS's assertions, the September 29, 1987 payment does not support its claim that the parties shared a different understanding about this unambiguous contract.

---

1. Specifically, the Court questions both the submission of mediation-related documents to the Court and the failure to respond to the defendants' statute of limitations defense to Count IV. Moreover, the pleadings submitted by CIS on the issue of compliance with Magistrate Judge Robinson's order demonstrate a willingness to disobey a direct court order. *See* CIS's June 23, 1992 "Opposition to Defendant's Motion to Preclude Plaintiff's Evidence on Damages." All of these episodes cast doubt on counsel's effort to portray the failure to comply with Local Rule 108(b) as an isolated incident.

2. The check was received by CIS on October 2, 1987.

CIS has failed to overcome the strong presumption that the words of the contract control its interpretation. Where a "release is facially unambiguous" the Court "must rely solely upon its language as providing the best objective manifestation of the parties intent." *Bolling Federal Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C.1984). The court also noted that a contract should be construed to "give meaning to all of the express terms." *Id.* (citations omitted). Furthermore, "extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous." *1010 Potomac Assocs. v. Grocery Mfg.*, 485 A.2d 199, 205 (D.C.1984); *see also, Davis v. Davis*, 471 A.2d 1008, 1009 (D.C.1984).

CIS correctly notes that the Court in *1010 Potomac Assocs.* authorizes an examination of the circumstances surrounding the making of the contract. *1010 Potomac Assocs., supra*, 485 A.2d at 206. If anything, the surrounding circumstances in this case support the defendants' position that the releases should be interpreted in accordance with the plain meaning of the contract. In late September 1987, Donohoe paid for change orders incurred earlier that summer. In early October 1987, CIS signed release forms waiving "any and all claims" for work done prior to August 25, 1987. This conduct on the part of Donohoe does not call into question the meaning of the releases, nor does it overcome the strong presumption that the language of the release forms control.

Additionally, the Court notes that CIS did not make any written exceptions to the clear language of these releases at the time they were executed. Other courts addressing this issue have found this fact persuasive. *See Rexrode v. Vinson*, 404 F.2d 830, 831 (D.C.Cir.1968) (fact that no stipulation exempting certain claims was attached to release forms is significant); *Mississippi*

*Power & Light Co. v. United Gas Pipeline, Co.*, 729 F.Supp. 504, 508 (W.D.Miss. 1989) ("it is not reasonable that parties intended claims to remain viable but did not include a specific reservation in the broad release").

Based on an analysis of the *Beech* factors, this Court concludes that the plaintiff's motion to reconsider partial summary judgment should be denied.

## IV

### *Motion for Partial Summary Judgment on Counts I–III*

■ The defendants filed a second motion for partial summary judgment on Counts I–III of CIS's first amended complaint. This motion seeks dismissal of all of CIS's claims which arose prior to September 11, 1987.[3] The basis of this motion is that claims arising from events prior to this date are barred by the statute of limitations.[4]

■ The defendants' motion is apparently based on the theory that the contract to refurbish the halls and corridors of the Georgetown Holiday Inn constituted a series of separate contracts. The defendants claim that each separate breach alleged by the plaintiff was actionable at the time it occurred. Consequently, the defendants contend, the statute of limitations began to run on each separate occasion where the defendants allegedly breached the contract. Since the initial complaint was filed September 11, 1990, all breaches of contract occurring before September 11, 1987 are time barred under this theory.

In pursuing this motion, the defendants rely on the testimony of CIS's vice president L. Philip Cady who, in his deposition, characterized a number of different actions by Donohoe, some occurring prior to Sep-

---

**3.** In light of this Court's denial of the motion to reconsider partial summary judgment on pre-August 25, 1987 claims, this separate motion for partial summary judgment only covers claims arising after August 25, 1987 and before September 11, 1987.

**4.** The statute of limitations for breach of contract claims in the District of Columbia is three years. D.C.Code Ann. § 12–301 (1989). This statute of limitations period would also apply to any equitable claims, such as unjust enrichment, arising from the same conduct. *Hurdle v. American Sec. & Trust Co.*, 32 F.2d 954, 956 (D.C.Cir.1929).

tember 11, 1987, as "breaches" of the contract. The defendants also stress that the plaintiff's own complaint lists separately, by date, the conduct of Donohoe which they claim were breaches of contract.

Although there is precedent for the proposition that separate and distinct contracts each carry their own statute of limitations, those cases involved entirely different factual situations. "Where a contract obligates one party to perform a series of acts, and provides for a corresponding series of payments in consideration thereof, each failure to perform may be considered a separate, partial breach." *National R.R. Passenger Corp. v. Notter*, 677 F.Supp. 1, 5 (D.D.C.1987). In *Notter*, the court held that a contract to pay for janitorial services was breached each time the defendant failed to compensate the plaintiff for services rendered. *Id.*

The defendants also rely on *Union Labor Life Ins. Co. v. Sheet Metal Workers National Health Plan*, No. 90–2728, 1991 WL 212232 (D.D.C. September 30, 1991). In *Union Labor Life*, Judge Lamberth stated that "breaches of duty which occur in distinct intervals ... cause distinct and separable injuries." *Id.* at 5 (holding that each failure to reimburse insurer for claims paid out was a separate breach).

The duty to make periodic payments for the performance of independent and unrelated services cannot logically be compared to the execution of a large construction contract. In this case the parties negotiated for one contract price ($237,323) to cover the cost of refurbishing 262 hotel rooms and seven corridors at the Georgetown Holiday Inn. The contract was later broken down into a work schedule which set targets for the rate at which the renovations would be completed and provided for interim payments. Although the defendants claim that each allegation made by CIS was a separate breach of the contract, the fact is that the work schedules and interim payment plan were not separate contracts.

While authority from this Circuit is limited, precedent from other jurisdictions supports the treatment of this type of contract as a unitary agreement. For example, the state Court of Appeals in Arizona has held that where construction contracts are at issue "a claim for work, labor or materials performed or furnished is the outgrowth of an entire contract for continuous work" and separate statutes of limitations are not appropriate. *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 463, 733 P.2d 652, 660 (Ariz.App.1986). *See also, Godde v. Wood*, 509 S.W.2d 435, 441 (Tex. Civ.App.1974).

The indivisibility of this agreement further is evidenced by the fact that the parties continued to negotiate throughout the month of September 1987 over the payment of change orders and other disputed matters. According to CIS's first amended complaint, the parties reached an agreement on September 12, 1987 which "amended the initial contract for the remainder of the work to be performed." *See* First Amended Complaint, ¶ 17. It thus appears that the parties were discussing the execution of this contract in a unitary sense rather than as a series of independent and discrete agreements.

Lastly, the policy justifications behind the statute of limitations militate against the defendants' position. The statute of limitations is primarily designed to insure that the evidence needed to adjudicate a claim will be available and that parties will not be unfairly confronted with stale claims. *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 118–19 (D.C.Cir.1982). In this case the defendants cannot claim that these policies are jeopardized by the inclusion of events under this contract which occurred prior to September 11, 1987.

For these reasons, the Court denies the defendants' motion for partial summary judgment on Counts I–III of the first amended complaint.

## V

### *Motion for Leave to File Second Amended Complaint*

On May 13, 1992 the plaintiff submitted a motion for leave to file a second amended complaint. This second amended complaint

seeks to add a claim against both defendants for "tortious interference with contractual rights". Plaintiff's Second Amended Complaint at 10. This new claim is based on allegations that Donohoe, through its agents, caused a third party, Beacon Hotel Corporation (Beacon), to cancel a contract with CIS for the refurbishment of rooms at two Guest Quarters Hotels in Washington, D.C.

The defendants oppose CIS's motion for leave to file a second amended complaint and have filed a number of motions to dismiss this new claim or for summary judgment.[5]

■ Under Rule 15 of the Federal Rules of Civil Procedure a party must seek leave of the Court to amend a complaint if the opposing party has already filed a responsive pleading. Rule 15 specifically states that where a party seeks permission to file an amended complaint "leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Given this standard, the Court grants the plaintiff's motion to file a second amended complaint.

However, acceptance of the second amended complaint obligates this Court to consider the defendants' procedural and substantive defenses to the new count. In their May 26, 1992 Opposition to the Plaintiff's Motion for Leave to File an Amended Complaint, the defendants argue that the statute of limitations warrants dismissal of this new claim.

Despite a subsequent motion by the defendants filed on June 16, 1992 for an order to treat their statute of limitations argu-

ments as conceded, the plaintiff has still failed to respond directly to this defense.[6] CIS only offers general statements about when the defendants were first notified of a potential claim similar to the one eventually contained in Count IV of the second amended complaint. CIS's response only addresses one aspect of the statute of limitations argument and it is insufficient to overcome the defense raised.

■ The defendants' statute of limitations argument is divided into two separate rationales. As explained below, the Court finds that the tortious interference claim does not relate back to the original complaint. Thus, this claim, filed well over three years after the date of the alleged event, is barred on statute of limitations grounds. *See* D.C.Code Ann. § 12–301 (1990). This conclusion precludes the need to decide whether the plaintiff properly characterized the claim as one for tortious interference or whether the actual cause of action asserted constitutes defamation.[7]

Since the plaintiff filed the second amended complaint on May 13, 1992, the amended version of Rule 15(c), which took effect on December 1, 1991, controls this question. The provision applicable here states that an:

> amendment of pleadings relates back to the date of the original pleading when . . .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth

---

**5.** Defendants filed the following motions in response to CIS' second amended complaint: May 26, 1992 Motion to Dismiss Count IV; June 1, 1992 Motion to Dismiss Count IV for Failure to State a Claim or for Partial Summary Judgment; June 16, 1992 Combined Motion for Entry of Order on Conceded Motion to Dismiss; June 19, 1992 Defendant's Motion to Strike Plaintiff's Affidavit In Support of Opposition to Dismiss Count IV.

**6.** On both June 30, 1992 and July 1, 1992, CIS filed an opposition to the defendants' motion for an order treating their motion to dismiss as conceded. CIS attempted to claim, without any basis in fact or law, that the defendants aban-

doned their statute of limitations arguments by filing subsequent motions regarding Count IV of the second amended complaint.

In fact, the defendants' subsequent motions, which were filed in time to comply with the Court's deadline, explicitly preserved the statute of limitations argument. The plaintiff's claim to the contrary is without merit.

**7.** A claim for defamation has a one year statute of limitations. *See* D.C.Code Ann. § 12–301 (1989). If the plaintiff's allegations constitute defamation, the claim is time barred even if it relates back to the original complaint, because the initial complaint was filed over one year after the events at issue.

or attempted to be set forth in the original pleading.

Fed.R.Civ.P. 15(c).

The fact that "relation back is intimately connected with the policy of the statute of limitations" is evident from the situation facing CIS. *Id.* 1966 Advisory Committee's Notes. Had CIS never filed an initial complaint, the tortious interference action filed on May 13, 1992 would clearly be time barred because more than three years had elapsed since the events giving rise to the cause of action. Thus, CIS can only proceed with this claim if it relates back to the original complaint filed on September 12, 1990.

In interpreting Rule 15(c) courts have uniformly precluded relation back unless the new claim arises from the same transaction or occurrence set forth in the original complaint. *Foretich v. Glamour,* 753 F.Supp. 955, 962 (D.D.C.1990); *see also, Percy v. San Francisco Gen. Hosp.,* 841 F.2d 975, 978 (9th Cir.1988) (new claim allowed if it will be proved by same kind of evidence and involves the same "transaction, occurrence or core of operative facts") (citations omitted); 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1497 (1990) ("where plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c) will not authorize relation back").

In the case before the Court the "core operative facts" of the initial complaint are allegations concerning the refurbishment of rooms and corridors at the Georgetown Holiday Inn. The plaintiff's original two claims, for breach of contract and unjust enrichment, arise solely from the renovation work done at this hotel and the relationship between CIS and Donohoe. The defendants' counterclaims similarly arise solely from disputes over the performance of this work.

The tortious interference claim now asserted by CIS, while factually connected, does not "arise" out of the conduct alleged in the original complaint. This complaint and the first amended version focus on the defendants' compliance with the terms of the contract, particularly the furnishing of

rooms and furniture in order to allow the contract work to be completed. Neither complaint contains any facts or allegations regarding the defendants' communications with third parties, statements to other hotel operators, or CIS contracts or negotiations with third parties.

It is significant that the factual underpinnings of the second amended complaint are entirely different than the breach of contract claims. Where an amended complaint contains a completely new transaction, relation back is improper. *Monks v. Marlinga,* 732 F.Supp. 749 (E.D.Mich.1990), *aff'd,* 923 F.2d 423 (6th Cir.1991). In *Monks,* an assistant prosecutor who alleged age discrimination in her original complaint, unsuccessfully attempted to relate back a later claim of slander against the defendant for statements made after her termination. *Id.*

Although, as in the present case, the slander allegation was factually connected to the wrongful termination dispute, the court in *Monks* refused to relate back the slander claim. The court concluded that the facts alleged in the original complaint did not relate to the subsequent slander and the conduct giving rise to both claims was entirely different. *Id.* at 754. Many other courts facing this type of situation have reached similar conclusions. *See also, Rosenberg v. Martin,* 478 F.2d 520, 526–27 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973) (assault claim did not relate back to slander claim despite close temporal proximity); *Graboi v. Kibel,* 432 F.Supp. 572, 575 (S.D.N.Y. 1977) (victim of rape could not relate back negligent building construction and maintenance claim to action for breach of contract and vicarious tort liability against building owner); *Pendrell v. Chatham College,* 386 F.Supp. 341, 346 (W.D.Pa.1974) (action for slander and trespass does not relate back to civil rights claim arising from wrongful termination).

CIS failed to address in its papers or at oral argument the statute of limitations problems raised by the fact that the tortious interference claim does not arise out of the same conduct as the other claims. The only argument raised by CIS to rebut

the statute of limitations defense is that informal oral notice of these claims was provided to the defendants as early as January, 1988. However, as explained below, this alleged notice [8] is insufficient grounds for concluding that the new claim relates back.

Although notice is an important factor in determining what "justice requires" under the general principles of Rule 15, it is not the only consideration. As noted, Rule 15 specifically requires that, in addition to satisfying basic notions of fairness, the claim in an amended complaint must arise from the same transaction, occurrence or conduct alleged in the original complaint. "The general practice under Rule 15(c) is to permit relation back so long as the new claim arose out of the defendants' conduct as set forth in the original complaint *and* the original complaint gave defendant notice sufficient to avoid prejudice." *Foretich, supra,* 753 F.Supp. at 962 (emphasis added). *106 Mile Transport Assocs. v. Koch,* 656 F.Supp. 1474, 1487 (S.D.N.Y. 1987) ("[i]f the facts in the original pleading do not provide defendant with notice of facts out of which the time-barred claim arises then relation back is inappropriate").

Clearly, both elements—same conduct and adequate notice—must be satisfied before relation back of new claims is permitted. CIS's claims that the defendants were on notice is not, by itself, a sufficient basis for relation back.

Even if CIS did provide "informal" notice of the tortious interference claim, it is not clear that this would be enough under Rule 15(c). In *Holdridge v. Heyer–Schulte Corp.,* 440 F.Supp. 1088 (N.D.N.Y.1977), the plaintiff tried to relate back claims of defects in new prosthetic devices to an initial complaint of a single defective prosthetic device. The plaintiff claimed that relation back should be permitted because the defendant had been put on notice of her new claims from answers to interrogatories and other pleadings filed with the court.

The court rejected this approach and stated that "in applying the relation back doctrine [the court] must look to determine if adequate notice was supplied in the *original complaint,* rather than by papers which were subsequently filed in the action." *Id.* at 1094 (emphasis added).[9] *See also, 106 Mile Transport Assocs., supra,* 656 F.Supp. at 1487 (in determining Rule 15(c) motion "court must focus on the notice given by the factual situation set forth in the original pleadings"). In this case, CIS's bases its claim of adequate notice not even on formal pleadings or discovery materials filed with this Court, but rather on mere discussions with the defendants.

CIS does not explain why it chose to exclude the tortious interference claim from the first two complaints. CIS was aware of this claim for over four years before filing it with the Court. If anything, the fact that CIS informally mentioned this claim to the defendants four years ago, but then twice decided to forego the opportunity to include the cause of action in its complaints, conveyed a mixed message. CIS's conduct could easily, and reasonably, be interpreted as implicit notice that it would not be pursuing the tortious interference claim.

CIS's position, if adopted, would set a poor precedent for future litigants and undermine the efficacy of placing limitations on actions. Under CIS's theory a plaintiff could circumvent the statute of limitations defense by merely informing a defendant of alternative causes of action which might be filed at some point during the course of litigation. Such inoculations could easily

---

**8.** Despite CIS's assertions, it is not clear that the defendants were adequately notified of the tortious interference allegation. CIS does not argue that the original complaint provides notice of the tortious interference claim. Instead, CIS says it gave oral notice about a possible cause of action regarding the alleged loss of a contract with Beacon Hotels. CIS has presented no documentation on the form or content of the notice it claims it provided to the defendants. CIS does refer the Court to its comprehensive mediation pleading, which is suppose to be kept confidential.

**9.** The court in *Holdridge* went on to hold that the plaintiff could not relate back her new claims because they arose from a different set of operative facts.

be manipulated for strategic purposes and unfair tactical advantage.[10]

Regardless of the informal notice that may have been conveyed, the defendants will suffer prejudice if the tortious interference claim is allowed to relate back to the original complaint. If the tortious interference claim is added, the defendants will be forced to alter their trial preparations dramatically and develop a defense strategy without the benefit of a full discovery period.

In summary, under Rule 15 a new claim will relate back to the original complaint, thus avoiding the applicable statute of limitations, if it arises from the same operative set of facts as the transaction or occurrence which gave rise to the initial complaint. Although there is a logical connection between the new claim here and the conduct alleged in the original complaint, the events at issue are distinct. Therefore, relation back is not appropriate in this case and the tortious interference claim is barred by the statute of limitations.

## VI

### Conclusion

This Court has reviewed the numerous pretrial motions outstanding in this case. This Memorandum and the attached Order issued contemporaneously herewith resolve each of the pending motions. Motions not specifically addressed in this memorandum are either dismissed as moot or were decided by Magistrate Judge Robinson June 8, 1992 order. The Court strongly urges counsel for both sides to resolve any outstanding discovery issues that exist after the issuance of this Memorandum and Order.

### ORDER

On the basis of the Memorandum issued contemporaneously herewith, it is this 23rd day of December, 1992

ORDERED that the plaintiff's motion for reconsideration of partial summary judgment be and it is hereby denied; and it is further

ORDERED that the defendants' motion for partial summary judgment as to Counts I–III (based on statute of limitations) be and it is hereby denied; and it is further

ORDERED that the plaintiff's motion for leave to file second amended complaint be and it is hereby granted; and it is further

ORDERED that the defendants' motion to dismiss Count IV of the plaintiff's second amended complaint for failure to state a claim because of the statute of limitations be and it is hereby granted; and it is further

ORDERED that the defendants' motion for partial summary judgment as to Count IV, combined motion for entry of order on conceded motion to dismiss Count IV of plaintiff's complaint, and motion to partially strike plaintiff's affidavit submitted in support of plaintiff's memorandum contra defendants' motion to dismiss or, alternatively, motion for summary judgment as to Count IV of plaintiff's second amended complaint are dismissed as moot in light of this Order.

---

10. CIS also argues the defendants conducted discovery on this new count and therefore will suffer no prejudice from the added claim. The mere fact that some discovery has been done on a claim contained in an amended complaint does not automatically qualify it for relation back. *See Davis v. Potomac Elec. Power Co.,* 449 A.2d 278, 281 (D.C.1982). In fact, by orally notifying the defendants of this claim, CIS forced the defendants to investigate the validity of the tortious interference claim.

In any event, the depositions of people involved in the tortious interference claim were taken after the defendants were served with the second amended complaint.