The UNITED STATES of America for the Use and Benefit of CHASE SOMERSET CORPORATION, Plaintiff,

v.

BECON SERVICES CORPORATION, and Aetna Casualty & Surety Company, Defendants.

C.A. No. 93–0988 (CRR/PJA).

United States District Court, District of Columbia.

Nov. 19, 1993.

---

Stephen Shapiro and Steven Gordon, Dunnells & Duvall, Washington, DC, for plaintiff.

Anthony N. Palladino, Smith, Pachter, McWhorton & D'Ambrosio, Vienna, VA, for defendants.

### MEMORANDUM OPINION

ATTRIDGE, United States Magistrate Judge.

Before the Court, pending resolution, are three dispositive motions. The defendant, Becon Services Corporation [1] (Becon), moves for summary judgment on the grounds: (1) that the plaintiff, Chase Somerset Corporation (Chase), has unconditionally and completely released it from all claims under the contract between them; (2) that Chase has failed to comply with the contract notice requirement with respect to its claim for money damages and therefore is precluded from seeking additional compensation, and (3) Chase's cross-motion for summary judgment in its favor on Becon's counter claim for attorney fees and costs.

In the summer of 1990, Chase and Becon entered into a contract under which Chase agreed to provide labor and materials relating principally to the installation of drywall, stucco, acoustical ceiling and doors at the National Defense University, Fort McNair, Washington, D.C. in consideration of the payment of $1,825,000.00. Becon was the general contractor and Chase was one of its subcontractors on the project

The subcontract general conditions provided that:

[the] Subcontractor shall invoice Contractor by the 25th of the month for the work performed during the thirty (30) days prior period. Contractor will pay Subcontractor within thirty (30) days after receipt (of) an approved and corrected invoice supported with a "Partial Release of Lien" (Attachment 1) the amount of the invoice less ten (10%) percent retention or whatever amount is retained by the Owner, which ever is greater. (Article 22(C) of the Subcontract General Conditions.)

With respect to changes in the work that may become necessary the agreement provided that:

(I)f such changes cause a material increase or decrease in the cost of performing the work on the time of performance and prompt written notice of any increase is given by Subcontractor to Contractor not later than seven (7) calendar days after the giving of such notice of change, an adjustment in the Subcontract price and/or the time of performance shall be made. (Article 4A of the Subcontractor General Conditions.)

Concerning delays in the progress of the subcontractor, the general conditions provide:

If Subcontractor is delayed in the progress of the Work, written notice thereof and of the anticipated results shall be given by Subcontractor to Contractor not later than seven (7) calendar days after the event causing the delay. Delays caused by the Contractor or Owner or by circumstances beyond the reasonable control of Subcontractor and not reasonably foreseeable by Subcontractor in time to be prevented shall, upon approval by Contractor, be the basis for an extension of time of completion, provided that timely notice has been given as required by this Article. *Subcon-*

1. The defendants Becon Services Corporation and Aetna Casualty & Surety Company are treated as one and the same and all references to Becon include Aetna.

*tractor hereby waives any claim to damages which it may suffer by reason of any such cause which delays Subcontractor in the performance of the Work.* (Article 8 of the Subcontractor Conditions.) (Emphasis added.)

Lastly, the general conditions state:

No claim for additional compensation ... shall be considered unless presented to Contractor's Site Manager in writing within ten (1) days after the occurrence giving rise to the dispute and include complete justification to include time and cost detail of the claim.... (Article 28 B of the Subcontract General Conditions.)

After signing 22 separate releases between July 25, 1990 and November 10, 1992, (Attachment 1 referred to in Article 22(C) of the Subcontractor General Conditions) acknowledging receipt of progress payments under the contract, Chase made a claim against Becon for an additional $1,213,477.00 for labor costs it contends it incurred because of delay and other inefficiencies it encountered by reason of the actions of the contractor. Becon refused to honor this demand and this suit followed.

Becon denies that its actions in anyway contributed to the delays Chase allegedly encountered and seeks summary judgment in its favor contending that by signing each of the 22 partial payment certificate and release of liens, Chase released Beacon for all claims and obligations of every nature arising out of the subcontract covering the period immediately preceding the date on which the release was executed.

Beacon, in a supplemental filing, also seeks summary judgment on the grounds that Chase is precluded from claiming additional sums because it failed to give timely written notice of the claim it now asserts. It urges that under Article 15 of the General Conditions, "(f)ailure to provide timely notice constitutes a waiver by the Subcontractor of relief under the provisions of the Subcontract."

In opposition to these motions, Chase contends that it "continually put Becon on notice of the delay and disruption that it was experiencing to its work" (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment for failure to comply with contract notice requirements, at 2.) A summary of the notices relied upon is attached to the plaintiff's opposition to the defendants' motion for summary judgment for failure to comply with the notification requirements and is identified as Exhibit 1. The exhibit, over 35 pages in length, summarizes the notices it provided Becon over the period July 9, 1990 to September 12, 1991. According to this exhibit, the manner of notification varied. Some notifications were in the form of a report, others in the form of a meeting minute and still other notifications were made in a work plan or as a result of correspondence. Chase also contends that Becon was not prejudiced by any alleged lack of notice and that Becon waived the notice requirement by considering its claim on the merits without any protest as to lack of knowledge.

In opposition to Becon's motion for summary judgment on the grounds that Chase fully released Becon from any further claims by execution of 22 separate release forms, Chase argues that Becon was on notice that it was experiencing delay and disruption on the job and, therefore, Beacon should have known that Chase would submit a claim for additional labor costs following substantial completion of the project; that neither Becon nor Chase considered the release forms to be a release of a subsequent claim for increased labor cost, and that timely progress payments were critical to Chase's continued operation; that Becon knew this but nonetheless forced Chase to sign the releases before making a progress payment, and that therefore the releases were signed under duress.

*Becon's Motion for Summary Judgment*

Chase seeks to avoid the effect of the 22 partial release it signed by alleging that they were the product of economic duress. "What constitutes economic duress is a matter of law, but whether or not duress existed in a particular transaction is usually a question of fact." *Rizzi v. Fanelli,* 63 A.2d 872, 874 (D.C.1949).

According to Chase's statement of material facts not in dispute, (para. 24), the first occa-

sion that Becon would not release a $10,000 payment unless Chase signed a partial payment certificate occurred on November 10, 1992. Prior to that, Chase had signed 21 partial payment releases extending back to July 25, 1990, without any alleged "threat" by Becon. The November 10, 1992 partial release was the last of the 22 partial payment releases tendered and signed by Chase. Each release, by its terms, "release(d) and forever discharge(d) Becon ... from all claims, liens and obligations of every nature arising out of or in connection with the performance of the ... subcontract." Chase does not assert that any discussions were had with Becon regarding the execution of the 21 other releases it signed prior to November 10, 1992.

■ The Court is satisfied that Chase has failed to raise any genuine issue of material fact as to its claim of economic duress. Prior to November 10, 1992, it was paid $1,735,-343.68 and executed 21 separate partial releases when it received its progress payments without any alleged threat by Becon to withhold a progress payment unless the partial release was signed. Such a course of conduct over a period of two and one half years is wholly inconsistent with Chase's present assertion that it signed the partial releases under duress. At best, the threat was only made regarding the very last payment it received and that was in the relatively inconsequential sum of $10,000.00. The Court concludes that such an alleged threat, as a matter of law, does not constitute economic duress with respect to the prior releases.

Chase's strongest argument revolves around the issue of notice. Its summary of notices (*See* Exhibit 1 attached to Memorandum in Opposition to Defendants' Motion for Summary Judgment for failure to comply with contract notice requirements), shows that Chase began to complain on July 9, 1990, shortly after it commenced work. The complaints were voiced with increasing frequency so that by January 1991, the summary list for that month was slightly over one page. By February 1991, the summary list of complaints exceeded 5 pages. Again in March 1991, the summary list exceeded 5

pages. By April 1991, the summary list grew to 6 pages and in May, it encompassed over 5 pages. Thereafter, it tailed off with no further complaints after September 19, 1991. However, by August 29, 1991, when it signed the 14th partial release acknowledging receipt of a progress payment, it had been paid over $1,570,000.00. On November 15, 1991, it executed partial release 15 and received an additional partial payment of $45,663.61.

■ Never once during this time does Chase allege, either in its pleading or statement of material facts, that it provided Becon with any notice that it would seek damages due to labor inefficiencies alleged to be caused by the conditions represented in 35 page summary of notices. The clear, unequivocal and unambiguous language of their subcontract agreement states:

No claim for additional compensation ... shall be considered unless presented to Contractor's Site Manager in writing within ten (10) days after the occurrence giving rise to the dispute and include complete justification to include time and cost detail of the claim ... (Article 28 B)

Chase argues that it also gave notice to Becon's president during a dedication ceremony in September 1991, when Chase's project manager, James Galloway, approached Becon's president, Clifford Mumm, to complain of Chase's financial problems. But this alleged notice also falls far short of the contract requirements. Concededly, Chase did not give Mr. Mumm a statement of justification including time and cost detail. In fact, no such breakdown was provided until November 12, 1992, some 14 months after substantial completion of the job. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment for failure to comply with notice requirements, at 4, 5.)

Mr. Mumm's sympathy for a loyal, hardworking subcontractor, by no means can be said to be the legal equivalent of a waiver of a contract provision requiring specific itemization within a specific time. Indeed, Becon did give sympathetic equitable consideration to Chase's claim even during the course of this litigation. However, Becon's offers of

resolution were rejected by Chase as unsatisfactory and it preferred to rely on its common law and statutory rights.

■ Each of the partial releases contained a space for Chase to list each and every claim it was not releasing as well as the specific amount claimed. No reason has been advanced by Chase with regard to why it failed to set out any exceptions to its release of all claims other than Becon must have known it would assert a later claim. Notwithstanding Article 28 B, which in no uncertain terms informed Chase that no claim for additional compensation would be considered unless itemized and presented within 10 days, Chase waited until November 1992, 14 months after substantial completion of the project and following the execution of 22 partial release forms, before it first informed Becon of the full amount and nature of its claim for an additional $1,213,447. Chase chose to ignore the notification conditions of Article 28 B as well as to ignore the "exception" requirements of the partial release forms. It has failed to present any legal justification to overcome the plain, unambiguous language of the subcontract's general conditions as well as the partial release forms.

In a somewhat similar case in which summary judgment was entered for a general contractor and against the subcontractor, the Court wrote that the partial release forms "clearly and unambiguously state that CIS waives 'any and all claims' for work done prior to the date contained in the release form ...;" that the plaintiff has failed to overcome the presumption that they should be interpreted as they are written and therefore it is not entitled to any additional payment. *CIS, Inc. v. Donahoe Companies, Inc.*, 813 F.Supp. 29, 32 (D.D.C.1992). And so it is in this case, Chase has released Becon from "all claims, liens, and obligations of every nature arising out of or in connection with the performance of said Subcontract" which existed as of the date of the last release. It has failed to proffer any legal justification for failing to list any exception to

this all inclusive language or in failing to comply with the general conditions of the subcontract which required that itemized claims be presented within 10 days of a consequence giving rise to a dispute. Accordingly, it is not entitled to recover the sum of $1,213,477.00 for labor inefficiency costs it alleges it incurred from the inception of the contract through its completion and the execution of the November 10, 1992 release.

*Chase's Motion for Summary Judgment*

Chase has moved for summary judgment on Becon's counterclaim for attorney fees and costs incurred in defending this action. The counterclaim is premised on language contained in each of the 22 partial release forms wherein Chase agreed to indemnify and hold harmless Becon for costs, including attorney fees arising from work under the subcontract which may be asserted by Chase except for claims expressly preserved in the release.

Chase's motion relied on the authorities submitted by it in opposition to Becon's motion for summary judgment on the issue of the enforceability of the releases. Chase argued that "(d)efendants' counterclaim for indemnification depends on the issue of whether Chase Somerset's execution of Partial Payment Certificates operates to release the claim set forth in Plaintiff's complaint. If the Partial Payment Certificates do not release Chase Somerset's claim, Becon is not entitled to indemnification under the Partial Payment Certificates.[2] Thus, any determination on the merits of Defendants' motion is intertwisted with Plaintiff's Cross-motion." (Reply to Defendants' opposition to Plaintiff's cross-motion for summary judgment—pp. 4–5).

Since the plaintiff's motion is based solely on the premise that the partial releases it admittedly executed are unenforceable, and the Court having concluded otherwise, it necessarily follows, as argued by the plaintiff, that its motion for summary judgment based on Becon's claim under the provisions of the

**2.** It does not necessarily follow that, if the plaintiff does not prevail on the release issue, Becon is entitled to indemnification.

partial release forms must be, and hereby is, denied.

## ORDER

For the reasons stated in the memorandum Opinion accompanying this Order, it is this *18th* day of November 1993:

ORDERED that the defendants' motion for summary judgment based on the execution of partial releases and failure to comply with the notice provisions of the subcontract be, and hereby is, granted.

FURTHER ORDERED that the plaintiff's motion for summary judgment on Count II of the counterclaim be, and hereby is, denied.

FURTHER ORDERED that the trial of the counterclaim scheduled for November 22, 1993, is vacated. The parties shall be notified of the rescheduled trial date.